Rice vs. Kahn and another.

RICE, Respondent, vs. KAHN and another, Appellants.

*November 29 — December 13, 1887.*

CHATTEL MORTGAGES. *(1) Debt becomes payable when mortgagee takes possession. (2) Tender: Conversion. (3) Keeping tender good. (4) Affidavit of renewal: Statement of amount unpaid: Estoppel. (5) Time of filing affidavit.*

1. If a mortgagee, availing himself of a stipulation in a chattel mortgage, takes possession of the property, or is about to do so, before the debt secured by the mortgage falls due, he thereby confers upon the mortgagor the right to pay the debt and keep his property.

2. In such a case a tender of the amount of the debt, if kept good, divests the title of the mortgagee, and if thereafter he takes the property away and sells it against the remonstrance of the owner, he is liable in an action for its conversion.

3. Chattels were about to be taken by the mortgagees before the debts were due. The owner offered to pay the debts secured, exhibited the money to one of the defendants and to the sheriff who was acting as their agent, stated the amount thereof, and offered it to them. He afterwards kept the same money in his possession subject to the order of the mortgagees, and after bringing an action for conversion paid the money into court for their use. *Held,* that the tender was kept good.

4. Where the purchaser of mortgaged chattels, in making a tender of the amount of the debt secured by the mortgage, relied upon the statement of such amount in the mortgagee's affidavit of renewal, the mortgagee is estopped to say that the tender was not good because the debt secured was greater than stated in such affidavit.

5. Under sec. 2315, R. S., an affidavit in renewal of a chattel mortgage, filed more than thirty days previous to the expiration of two years from the filing of the mortgage, is ineffectual.

APPEAL from the Circuit Court for *Outagamie* County.

This case, and the facts which the testimony introduced on the trial tended to prove, are sufficiently stated in the brief of counsel for the plaintiff, as follows:

"This is an action of trover, brought by the plaintiff against the defendants, to recover the value of certain prop-

erty seized by the defendants under certain chattel mortgages. The facts in the case are briefly these: One Henry Flint executed three chattel mortgages, as follows: One dated February 18, 1882, to the defendant *Henry Hammel*, to secure the payment of $100, which mortgage was filed in the office of the town clerk of the town of Osborn, Outagamie county, Wisconsin, on the 23d day of February, 1882 (Henry Flint at that time residing in the town of Osborn); the second, executed by Henry Flint, then residing in the town of Seymour, in said county and state, to the defendant *A. Kahn*, to secure the sum of $100, which mortgage, bearing date October 5, 1883, was filed in the office of the town clerk of the town of Seymour, in said county, on the 6th day of October, 1883; the third mortgage was executed by Henry Flint, then residing in the town of Osborn, to one M. D. Newald, bearing date the 9th day of April, 1883, and filed in the office of the town clerk of the town of Seymour, in said county, on the 20th day of February, 1885. On the 25th day of February, 1885, Henry Flint sold and executed to *John Rice* a bill of sale of the same property covered by the three mortgages, which bill of sale was filed in the office of the town clerk of the town of Seymour, on the 26th day of February, 1885. The said Henry Flint resided in the town of Osborn, in the county of Outagamie, until some time in July, 1883, when he removed to the town of Seymour, and resided there until and after the 25th of February, 1885. The plaintiff paid part down in cash upon the property, and was to pay the balance by turning the account that Henry Flint owed him upon the purchase price of the property. Before purchasing the property in question, the plaintiff examined the records of the town clerk of the town of Seymour, where Flint then lived. On the 27th day of February, 1885, the defendant *A. Kahn*, acting in his own behalf and as the agent of *Henry Hammel* and M. D. Newald, went to the farm of the plaintiff, which was in posses-

sion of his tenant, Henry Flint, for the purpose of taking the property in question from the possession of Jerome Flint, residing there with his father, Henry, and in whose care the property had been left by *Rice*. While there for that purpose, but before he had succeeded in removing the property from the plaintiff's farm, and while in the act of doing so, the witness Mitchell, acting as the agent of the plaintiff, *Rice*, tendered to him the sum of $250, and thereupon demanded the possession of the property, which was refused. The defendants removed and disposed of the property. The plaintiff, by his agent, Mitchell, kept the identical money so tendered, separate and by itself, and brought the same into court on the trial, and deposited it with the clerk, where it now remains, subject to the order of the defendants."

The verdict and judgment were for the plaintiff for the value of the property in controversy. The defendants appeal from the judgment.

*Leopold Hummel*, for the appellants, contended, *inter alia*, that the legal title to the mortgaged property, with the right of possession, was in the mortgagees, and their title became absolute after condition broken. The only remedy of the mortgagor was an equitable action to redeem. *Musgat v. Pumpelly*, 46 Wis. 669; *Byron v. May*, 2 Pin. 443; *Smith v. Coolbaugh*, 21 Wis. 428; *Bates v. Wilbur*, 10 id. 415; *Judson v. Easton*, 58 N. Y. 664; *Bragelman v. Daue*, 69 id. 69; *Langdon v. Buel*, 9 Wend. 80; *Charter v. Stevens*, 3 Denio, 33; *Brown v. Bement*, 8 Johns. 98; *Talman v. Smith*, 39 Barb. 390; *Blodgett v. Blodgett*, 48 Vt. 32; *Leach v. Kimball*, 34 N. H. 568; *Williams v. Dobson*, 26 S. C. 110; *Wolff v. Farrell*, 3 Brev. 68; *Reese v. Lyon*, 20 S. C. 17; *Heyland v. Badger*, 35 Cal. 411; 11 Neb. 147; 39 Barb. 606; 60 N. Y. 218; 30 Minn. 125; 3 Cush. 322; 2 Wait's Act. & Def. 176; *Nichols v. Webster*, 2 Pin. 234; *Flanders v. Thomas*, 12 Wis. 410; *Smith v. Konst*, 50 id. 360;

*Appleton Iron Co. v. B. A. Ass. Co.* 46 id. 29; *Fraker v. Reeve,* 36 id. 85; Herman on Chat. Mortg. 443–454, secs. 189–191; Jones on Chat. Mortg. secs. 435, 632, 634, 699; *Burdick v. Mc Vaenner,* 2 Denio, 170; *Landon v. Emmons,* 97 Mass. 37; *Well v. Connable,* 138 id. 513; Hilliard on Mortg. 566; Thomas on Mortg. 445–6; Boone on Mortg. sec. 273; *Mowry v. First Nat. Bank,* 54 Wis. 38; *Smith v. Phillips,* 47 id. 202.

For the respondent the cause was submitted on the brief of *Raymond & Haseltine.* The affidavit of renewal filed more than thirty days preceding the expiration of two years from the date of filing the mortgage, was unavailing. Herman on Chat. Mortg. sec. 87; *Nat. Bank v. Sprague,* 20 N. J. Eq. 13–27; *Newell v. Warner,* 44 Barb. 258. The defendants are estopped from claiming more than the amount stated in the affidavit to be unpaid. Herman on Chat. Mortg. sec. 90; *Beers v. Waterbury,* 8 Bosw. 396. The plaintiff, after tender, might maintain an action of trover. Herman on Chat. Mortg. 469; Jones on Chat. Mortg. sec. 634; *Musgat v. Pumpelly,* 46 Wis. 660; *Smith v. Phillips,* 47 Wis. 202; *Boyd v. Beaudin,* 54 id. 193–198.

LYON, J. On the question whether the plaintiff can maintain this action of trover to recover the mortgaged property, in case he tendered sufficient to pay the mortgage debts which were valid as against him, or whether he is driven to his suit in equity to redeem, we have no difficulty or doubt. If the property in the hands of the plaintiff was only subject to the two mortgages recorded in Seymour; if the amount tendered by Mitchell in behalf of the plaintiff at the time the property was about to be taken under the mortgages, was sufficient to pay the debts secured thereby; and if such tender was kept good until the trial,— we hold that the tender divested the title of the mortgagees to the property just as effectually as a payment of the debts se-

cured by the mortgages would have divested it; and if they took, carried away, and sold the same after such tender, against the remonstrance of the owner, they are guilty of a conversion thereof, and the plaintiff (the owner) may maintain this action of trover against them and recover the value of the property. We do not regard the fact of any importance that the most of the mortgage debts were not due at the time the property was seized. If a mortgagee avails himself of a stipulation in the mortgage to that effect, and takes possession of the mortgaged property, or is about to do so, before the debt secured by the mortgage falls due, he thereby confers upon the mortgagor the right to pay the debt and keep his property.

We believe the views above expressed are sustained by the authorities cited on behalf of the plaintiff, and they certainly accord too well with justice and sound sense to be overturned by mere technicality. Substantially the same views were held by this court in *Harder v. Hosp*, 69 Wis. 288.

The controlling questions of fact in this case are, therefore, (1) Was a sufficient sum tendered on behalf of the plaintiff to redeem the property in controversy? and if so, (2). Was the tender kept good?

1. One of the mortgages under which the defendants claim, was filed in the town clerk's office in the town of Osborn, February 23, 1882, and an affidavit in attempted renewal thereof was filed in the same office, January 18, 1884. This was not a compliance with the statute in that behalf. R. S. sec. 2315. That statute requires such affidavit to be filed within thirty days next preceding the expiration of two years from the filing of the mortgage. This affidavit was not filed within that time, but was filed more than thirty days preceding the expiration of such two years. This failure renders the mortgage void as to purchasers in good faith of the mortgaged property. Hence,

if the plaintiff purchased the property in question without actual knowledge of the existence of such mortgage, he takes the property relieved from the lien thereof. Under the instructions of the court the jury necessarily found that he had no such actual knowledge, and the testimony sustains the verdict in that behalf. It was only necessary, therefore, for the plaintiff to redeem from the two mortgages filed in the clerk's office of Seymour, which were valid, subsisting liens upon the property in his hands.

The amount tendered was $250. The amount actually unpaid on those two mortgages, as between mortgagor and mortgagees, was a few dollars more than that sum. One of those mortgages, however, had been renewed by the filing of an affidavit under the statute, in which it was stated that the amount of the mortgagee's interest in the property by virtue of the mortgage was $130. Taking that sum as the amount unpaid on the mortgage at that date, the amount unpaid on both mortgages is a little less than $250. So the question is whether the mortgagee is bound by such statement in his affidavit of renewal — the plaintiff not knowing that more than $130 was then unpaid on the security. The principal object of the statute is to give notice to all persons interested, at intervals of two years, of the amount of the mortgage debt, and we think that the statements thus made may safely be relied upon by those who contemplate becoming interested in the mortgaged property. In the present case, the plaintiff examined the files in the clerk's office of Seymour, and did rely upon the statement contained in such affidavit of renewal. Under these circumstances, we hold that the mortgagee is now estopped to claim that more than $130 was due at the time he filed such affidavit.

It follows that a sufficient sum was tendered to pay the mortgage debts.

2. Was the tender kept good? It was made by Mitchell,

the agent of the plaintiff, when the defendants were about to seize the property under the mortgages. The proof tends to show that he exhibited the money to one of the defendants, and to the sheriff who was acting as agent for the defendants in seizing the property; that he offered the same to them, and stated the amount thereof at $250, and the purpose for which it was tendered; that he kept the same money in his possession, subject to the order of the mortgagees, until the trial, and during the trial paid the same money into court for their use. Beyond all question, the tender was kept good.

Some exceptions presenting other questions were taken to the rulings of the court on the trial, but in the view we have taken of the case they are not very material. We have examined these rulings to some extent, however, and fail to detect any error.

*By the Court.*— The judgment of the circuit court is affirmed.