,. (70 N. W. Rep. 271.

---

PLANO MANUFACTURING CO. *vs.* JOHN DALEY.

Opinion filed January 8th, 1897.

**Claim and Delivery—General Denial.**

> In claim and delivery a general denial puts in issue plaintiff's ownership and right of possession, and also the wrongful detention by the defendant, and under such denial defendant may introduce evidence to establish any of the issues so raised.

**Chattel Mortgage—Pleading and Proof.**

> Where, in such an action, plaintiff bases his claim to the property upon a chattel mortgage executed by defendant, and defendant, in his answer, admits the execution of the mortgage, and denies all the other allegations of the complaint, and also pleads certain facts upon which he predicates fraud in procuring the mortgage, if the evidence fails to establish fraud, but does show that defendant never intended to give, and plaintiff never intended to take, a mortgage upon the property in controversy, and that the mistake was not the result of defendant's negligence, then defendant will be entitled to a verdict in his favor, notwithstanding his failure to prove fraud.

**Directing Verdict for Defendant.**

> Evidence examined, and *held*, that the court did not err in directing a verdict for defendant.

· Appeal from District Court, Ransom County; *Lauder*, J.

Claim and delivery by the Plano Manufacturing Company against John Daley. From a judgment for defendant, plaintiff appeals.

Affirmed.

*Newman, Spalding & Phelps,* for appellant.
*Hugh Doherty*, for respondent.

BARTHOLOMEW, J. Every fact and circumstance surrounding this case, as shown by the record, tends to confirm the justice of the judgment from which the appeal is taken. If that judgment is to be disturbed, it must be by reason of some imperative rule of law. The action was claim and delivery. As we understand it, all the property mentioned in the complaint has been eliminated from the case except the wheat. In this plaintiff claimed a special interest and right of immediate possession by virtue of chattel mortgages executed by defendant. The execution of the mortgages was admitted, but it was claimed that they were obtained by fraud. All the circumstances attending the execution of the mortgage were fully set forth. There was, also, a general denial. After both parties had introduced their evidence, and rested, the court directed a general verdict for defendant. This is the one error assigned, and its consideration necessitates some reference to the testimony.

In the summer of 1893, the defendant became indebted to the plaintiff in the sum of $200 for machinery purchased. On July 28th of that year defendant gave the plaintiff a chattel mortgage securing two notes, of $25 each,—one maturing October 1, 1893, and the other a year later. On August 1, 1893, defendant executed to plaintiff another chattel mortgage securing two notes, of $75 each, maturing at the same dates. The mortgages, as well as those hereinafter mentioned, were drawn upon forms printed with blank spaces, and for the special use of plaintiff in North Dakota. The first portion of the instrument, naming the mortgagor and mortgagee, with their residences, etc., is about in the usual form. Then follow blank lines for the description of property, and, following the blank lines, is the following, in print: "All the crops, of every name, nature and description, now growing, sown, or to be sown, and to be grown, cultivated, and harvested during the years A. D. 1893, 1894, and 1895, and each and every succeeding year until the debt hereby secured is fully paid, on the following described land, now occupied or rented by me, to-wit, —— of section ——, town ——, range ——, county of ——, State

of North Dakota," etc. The mortgages above mentioned were very inartificially drawn, and yet we think their meaning clear. In the first mortgage certain machinery and live stock were described in the blank space, and immediately thereafter was written (the language being corrected) the following: "Also, 25 acres of wheat; also 25 acres of oats. This crop is grown and will be harvested for the Plano Manufacturing Co., of Chicago. This security is good till paid." Immediately followed the printed portion above set forth. In the space left for the description of the subdivision of the section was written "25 acres of wheat, 25 acres of oats." The section, town, and range, were properly filled, being section 1, town 134, range 58. The mortgage of August 1st, covered a binder and two colts, properly described in writing, and, in writing, "Also 10 acres of wheat grown on Sec. 1, 134, R. 58, ready to be harvested." In this mortgage, in the space for the subdivision of the section, was written "Binder, 2 colts, and ten acres of wheat,"—the other blanks being properly filled. The notes secured by these mortgages which matured on October 1, 1893, were not paid. On April 11, 1894, a collection agent of plaintiff called upon defendant for the purpose of extending the notes and taking new mortgages. The only conflict in the testimony relates to what took place at that time. It is undisputed that, at that time, defendant's eyesight was greatly impaired, and that he had recently had an operation performed upon his eyes, and, while he could write his name, he could not read print, or distinguish objects with any accuracy. This condition was well known to the agent, and was spoken of before business was mentioned. The agent had known defendant, as he testifies, for about nine years, and "knew him pretty well." When the agent stated the purpose of his visit, the defendant at once stated that, if additional security was wanted, he could not give it, as he had none to give. He was assured in positive terms (both parties so testify) that no additional security was wanted, and that plaintiff simply wished to extend the notes and renew the mortgage upon the same property. Thereupon the agent proceeded to draw

up new mortgages. These new mortgages covered the same machinery and same live stock described in the original mortgages, but no crop whatever was described in the written portion; but, in the blank left in the printed portion for a description of the subdivision of the section, instead of the matter contained in the old mortgages, the agent wrote in "Northeast ¼," making the renewal mortgages cover all the crops grown on that quarter section until the notes were paid. This controversy arises over wheat the greater portion of which was grown in the year 1895 on this tract of land, it being the quarter section owned by defendant and upon which he resided.

It is perfectly clear that the new mortgages covered property not covered by the old. It is equally clear that defendant never intended to give mortgages on any property not covered by the old mortgages, and equally clear that plaintiff, by its agent, represented and stated to defendant that it did not ask or expect a mortgage on any property not covered by the old mortgages. The presence of additional property in the new mortgages must, then, be the result either of fraud or mistake. If plaintiff took mortgages covering additional property, and knowingly did so, fully understanding, as it must, that defendant did not so intend, it was, under the circumstances of this case, considering the previous conversation, the condition of defendant's sight, his long acquaintance with the agent, and the unquestioned confidence that he placed in him, a gross fraud upon defendant that would avoid the mortgage as to the additional property. On the other hand, if plaintiff's agent inserted the additional property because he believed that it was in the original mortgages, when in fact it was not, and if defendant signed the renewal mortgages believing that they covered only such property as was covered by the old mortgages, then there was a case of mutual mistake, which would equally avoid the new mortgages as to the additional property.

But plaintiff urges that, since defendant pleaded fraud as a defense, he must establish fraud, or his defense must fail. Under

the evidence, it is said, fraud is not conclusively established, and therefore the court should have submitted the case to the jury, with instructions upon the question of fraud. We shall not discuss the evidence further than to say that, on defendant's part, it tended to show a strong case of fraud. On the other hand, the testimony of the agent to some extent, perhaps, qualified the statements of the defendant. We do not indorse counsel's proposition that the defense must fail unless fraud is established. There was a denial in the answer which in effect denied all the allegations of the complaint except the execution of the mortgages. This denied plaintiff's ownership and its right to possession, and also the wrongful detention; and under this denial defendant could prove any special matter that would defeat plaintiff's title or right of possession, or show that defendant did not unlawfully detain the possession. We believe this to be the correct and general rule under code pleading, while it may depart somewhat from the technical rule governing the pleadings in actions of replevin at common law. *Branch* v. *Wiseman*, 51 Ind. 1; *Holmberg* v. *Dean*, 21 Kan. 73; *Jansen* v. *Effey*, 10 Iowa 227; *Bailey* v. *Swain*, 45 Ohio St. 657, 16 N W. Rep. 370; *Richardson* v. *Steele*, 9 Neb. 483; 4 N. W. Rep. 83; *Aultman* v. *Stichler*, 21 Neb. 72, 31 N. W. Rep. 241; *Merrill* v. *Wedgwood*, 25 Neb. 283, 41 N. W. Rep. 149; *Pulliam* v. *Burlingame*, 81 Mo. 111. Indeed, some of the cases hold that special matter in an answer going to show that plaintiff has no right of property or of possession, or that there is no wrongful detention, is improperly pleaded; that it amounts to a pleading of evidence, as all the facts could be shown under a general denial. See *Aultman* v. *Stichler*, *supra*; *Kennedy* v. *Shaw*, 38, Ind. 474; *Davis* v. *Warfield*, *Id.* 461; *Lane* v. *Sparks*, 75 Ind. 278. In this case the evidence to show mistake not only came in without objection, but came largely from plaintiff's witness. It was entirely competent for defendant to show that the mortgages were the result of a mutual mistake, and that the minds of the parties never met in agreement upon any such terms,

But it is urged by appellant that this mistake was due to the negligence of defendant, and therefore he cannot be relieved therefrom. This contention, in this particular case, has no principle of equity or justice to commend it. The mistake, conceding that it was a mistake, and not a fraud, consisted in giving the mortgagee more than the mortgagor intended to give him, and more than the mortgagee asked for or expected to receive. When the mortgagor seeks to correct this mistake, so far as to exclude from the operation of the contract this excess, it is difficult to see any principle of justice upon which the mortgagee can resist it. But, conceding the technical rule of law to be as appellant claims, it is clear, under the evidence, that the mistake was not caused primarily by the negligence of defendant; and this conclusion is based upon the evidence of appellant's witness. We exclude from our consideration the positive testimony of defendant showing that he was not negligent. As we have stated, both parties testified that defendant said he could give no additional security, and that the agent said, in effect, that he simply wanted renewals covering the same property. Defendant did not have the original mortgages. They had been delivered to plaintiff. Plaintiff was chargeable with knowledge of their contents. The agent says that he does not think that he had the old mortgages with him. Defendant thinks that he had, but we assume that he had not. He nowhere claims that he informed defendant that he did not have the old mortgages. He says that he had a brief description of the property covered by the mortgages on the back of one of the notes or upon a slip of paper. He says that, so far as the crop was concerned, the memorandum simply said, "Crops 1—134—58," and that he did not know on what quarter section the crops were. He testifies that defendant gave him the description of the quarter section and of the property described in the mortgages. On cross-examination he says that he so swears because the description is in the mortgages, and he did not know it, and there was no one else to give it to him. It may well be that defendant gave him the description of the land

that he owned and resided upon. That would be entirely proper to fix defendant's residence and locate the property (stock and machinery) described in the old mortgages. He does not testify that defendant authorized him to include in the mortgages all crops to be grown on that land for a series of years. As already stated, that was included in the printed portion of the mortgage. It was only necessary to insert the description to complete the instrument. That there was, in fact, no special conversation or instructions concerning the crops is strongly evidenced by the mortgages themselves. They were given April 11, 1894, but covered the crop on the land described for the year 1893,—a crop already sold or consumed. That was simply because the year 1893 was in the printed form. No jury could properly have found, from plaintiff's evidence alone, that it was through defendants's negligence that the mortgages covered the crops on that quarter section for the year 1895.

But it is said that he was negligent in not discovering the mistake before the mortgage was delivered. This is based upon the fact that he called his daughter to witness the mortgages. She could readily read the instruments, and it is said he was negligent in not asking her so to do. Under the circumstances, we think that fact no evidence of negligence whatever. The condition of defendants's eyes was well known to the agent. He could not help knowing that defendant trusted to his honesty and accuracy. There had been a full understanding that the new mortgage should cover only what was in the old. If, under the circumstances, plaintiff's agent, either by fraud or mistake, included in the mortgages anything that ought not to have been there, plaintiff is in no position to say that defendant was negligent in not discovering it.

The judgment of the District Court is affirmed. All concur.