[No. 1293.]

BURCHINELL v. GORSLINE.

1. CHATTEL MORTGAGE—RECORD—NOTICE—ANNUAL STATEMENT.

Where a chattel mortgage for more than $2,500 is executed and recorded as required by statute and possession of the property retained by the mortgagor, the question as to whether or not such mortgage has become invalid by failure of the mortgagee to file an annual sworn statement as required by sec. 387, Mills' Ann. Stats. is not affected by knowledge of such mortgage by the attaching creditor or subsequent purchaser asserting the invalidity of such mortgage.

2. SAME—REASONABLE TIME FOR FILING STATEMENT.

Under sec. 387, Mills' Ann. Stats. providing that where a chattel mortgage for more than $2,500 is recorded and the property retained in the possession of the mortgagor, the mortgagee shall record annually a sworn statement to the effect that the mortgage was given in good faith and is unpaid, the year within which such statement must be filed begins one year from the date of the record of the mortgage, and, without deciding whether or not the statement may be recorded at any time within the year from that date, it is held that such statement may be recorded within a reasonable time from the beginning of the year and that seventeen days was a reasonable time within which to record such statement.

*Appeal from the District Court of Arapahoe County.*

Mr. H. E. LUTHE, for appellant.

Mr. C. REED and Mr. WILLARD TELLER, for appellee.

THOMSON, P. J., delivered the opinion of the court.

On the 25th day of October, 1892, Louis C. Rockwell made his promissory note to Julia F. Gorsline for $3,500, due three years from its date with interest; and, on the same day, to secure its payment, executed a chattel mortgage conveying to her certain personal property. The mortgage was duly recorded on the 3d day of November, 1892. A year afterwards the mortgagee executed and recorded the statutory affidavit that the mortgage was given in good faith, and that the note was unpaid. No further affidavit concerning the *bona fides* of the mortgage, or the nonpayment of the debt was ever made or filed. On the 20th day of November, 1894, William K. Burchinell, as sheriff of Arapahoe county, levied an execution issued on a judgment recovered by H. C. and H. A. Woodworth against Rockwell, upon the mortgaged property, and took it into his possession. The appellee thereupon commenced against Burchinell this action in replevin to recover the property, claiming title to it by virtue of her mortgage. The trial court sustained her claim to the property, rendering judgment in her favor, from which the defendant appealed to this court.

The mortgage provided for the retention by the mortgagor of the possession of the property, and provided that in case of default in the payment of the note, or in case of attachment of the property by other parties before the note should be paid, it should be lawful for the mortgagee to take immediate possession of the property and sell the same for the payment of the note. It was in evidence that at the time of the levy Mr. Rockwell informed the sheriff of the mortgage upon the property, and notified him that the mortgage debt was unpaid. It also appeared that before the levy was made the execution creditors had actual knowledge that the mortgage had been given. It is contended for the plaintiff that by virtue of the notice given to the sheriff, and the knowledge possessed by the execution creditors, the levy was subject to the mortgage, and the title conveyed by the mortgage would hold the property against the execution; while in behalf of the defendant it is said that by reason of the fail-

ure to record the sworn statement required by the statute at the expiration of the two years, the mortgage became of no effect as against creditors, and constituted no obstruction to the execution.

The questions presented are not free from difficulty, and in order to their satisfactory solution, an examination of the legal character of chattel mortgages, and of the statutory provisions by which they are governed in this state, will be necessary. A chattel mortgage is a conditional sale of personal property as security for the discharge of some obligation. Its effect is to transfer the legal title to the mortgagee, subject, however, to defeasance by performance of the condition of the mortgage. At common law to render the mortgage effective, except as against the mortgagor, possession of the mortgaged chattels must be taken by the mortgagee. His right to leave the property in the possession of the mortgagor, and still hold it as against the mortgagor's creditors, or subsequent purchasers from him, is statutory. The validity of the mortgagee's title, as to third persons, where he suffers the property to remain with the mortgagor, being entirely dependent on statute, it follows that the conditions of its validity prescribed by statute must be complied with. Whether the conditions are arbitrary, whether they are difficult of performance, whether any good reason for them is apparent, are questions with which courts have nothing to do. The fact that the statute has prescribed them is enough. *National Bank v. Sprague*, 20 N. J. Eq. 13; *Stewart v. Platt*, 101 U. S. 731.

The law of this state concerning chattel mortgages is contained in chapter 25 of Mills' Annotated Statutes, and in so far as it has any bearing on the questions to be considered, is as follows:

"Sec. 385. No mortgage on personal property shall be valid as against the rights and interests of any third person or persons, unless possession of such mortgaged property shall be delivered to and remain with the mortgagee, or the said mortgage be acknowledged and recorded, as hereinafter directed.

"Sec. 386. Any such mortgagor shall acknowledge such mortgage before some officer authorized to take the acknowledgment of deeds to real estate in this state. Said officer shall certify the same as follows: This mortgage was acknowledged before me by A. B. (name of mortgagor,) this —— day of ————, A. D., ——.

"Sec. 387. Any mortgage of personal property so certified, shall be admitted to record by the recorder of the county where the property mortgaged, or the greater part thereof, shall be situated, and shall thereupon, if *bona fide*, be good and valid from the time it is so recorded until the maturity of the last installment of the mortgage indebtedness, * * *; *provided*, that if such mortgage be given to secure a sum greater than $2,500, there shall be recorded annually on the records of the county wherein such mortgage shall have been recorded, a sworn statement of the mortgagee, or one of the mortgagees, if there be more than one, showing:

"*First.* That said mortgage was given in good faith to secure the payment of the sum of money mentioned therein;

"*Second.* That said sum of money is still unpaid; or if a portion thereof shall have been paid, then how much thereof, if any, remains unpaid."

"Sec. 394. Any person who may buy or otherwise obtain any personal interest in any personal property which is mortgaged in pursuance of this act, but the mortgage of which has not been recorded, and with actual notice of such mortgage, shall be deemed and considered to have bought or obtained such interest in such property subject to such mortgage, the same as though such mortgage had been properly recorded." Gen. Stat. pp. 159, 161; Session Laws, 1889, p. 54.

As between the immediate parties, a mortgage of chattels is good without acknowledgment or record; and in what we may say concerning the validity of a chattel mortgage, we will be understood as referring only to its effect upon third persons. When possession of the property is not taken by the mortgagee, to give the mortgage any effect in the first instance, it must be acknowledged, and, except as against

persons having actual notice of its existence, recorded. Subject to the exception referred to, the mortgage is effective from the time when it is recorded; but if the debt secured exceeds the sum of $2,500, its validity by virtue of its record continues only until the time when the record of the first sworn statement required by the statute is due. The record of that statement is by the terms of the statute a necessary condition of its further validity; and upon a failure to make such record, its virtue is exhausted. If the statement is duly recorded, the mortgage remains in force until the next statement is due; and so the effect of the record of each annual statement, is to preserve the vitality of the mortgage until the time when by the terms of the statute, the succeeding one should be recorded.

When the execution in question was levied the second statement required by the statute had not been recorded; and if the time had elapsed within which it should have been recorded, the mortgage was of no effect, and the property was subject to the execution. On the hypothesis that the time for recording the statement had expired, it is contended for the plaintiff that the knowledge possessed by the Woodworths, and by the sheriff, of the existence of the mortgage, precludes them from availing themselves of the failure to file the statement. The argument is largely based on decisions in other states, the applicability of any one of which to this case, is dependent upon the degree of similarity between the statute which it construes and our own. The authority of the legislature to prescribe the terms upon which mortgaged chattels shall remain with the mortgagor is nowhere denied; and in disposing of questions arising between a mortgagee and third persons becoming interested in the property, there is no guide except the statute by which the mortgage was authorized; consequently the meaning and effect of each decision is dependent upon the statute law of the state in which it was rendered. The only provision of our statute concerning notice, or the effect of notice, of the mortgage, is section 394. That section is a limitation upon the terms of

section 385.   By the latter section no mortgage of personal property, where the mortgagor retains possession, is valid against the rights and interests of third persons, unless the mortgage is acknowledged and recorded in conformity with subsequent provisions; but section 394 provides an exception in favor of the mortgagee whose mortgage, executed in pursuance of the act, is not recorded, as against persons acquiring a personal interest in the property with actual notice of the mortgage.   It is plain that the sole purpose of the section is to make actual knowledge equivalent to record.   The effect of the notice upon the person having it, is the same as the effect of the notice imparted by the record, no greater and no less.   But the effect of actual notice is limited to cases in which the mortgage has not been recorded.   This mortgage was recorded; the section therefore has no applicability to it, and for the purposes of this decision it is immaterial whether there was actual notice or not.

The case of *Reiderer v. Pfaff*, 61 Fed. Rep. 872, to which reference is made, is not in point.   That case arose in Oregon, and the decision puts a construction on the statute of that state.   The statute provided that a chattel mortgage should cease to be valid against the creditors of the person making the same, or subsequent purchasers or mortgagees *in good faith*, after the expiration of one year from the filing of the same, unless an affidavit of renewal should be filed within thirty days next preceding the expiration of the year.   The mortgagee had failed to file an affidavit of renewal within the year, and the question was between him and a subsequent mortgagee.   The court held that the words "in good faith," as used in the statute, were equivalent to the words "without notice," so that as against subsequent purchasers and mortgagees with notice of the preëxisting mortgage, the title of the mortgagee would prevail, notwithstanding his failure to renew.   Our statute contains no such qualification or limitation.   Its language is peremptory, and the recording of the sworn statement within the proper time is essential to the continued validity of the mortgage.   Knowledge on

the part of a person acquiring an interest in the property, of the existence of a prior mortgage, the affidavit necessary to the preservation of which had not been recorded, could not prejudice his right in the property. It would amount only to knowledge of an instrument which had become void as to him. See *Porter v. Dement*, 35 Ill. 478; *Rich v. Roberts*, 48 Me. 584; *Bank v. Hastings*, 7 Colo. App. 129.

While we have no doubt that except as between the mortgagor and the mortgagee, the necessity for recording the statement is imperative, when we come to an investigation of the question within what time the record must be made so as to satisfy the statute, we encounter the real difficulty in the case. That difficulty lies in the uncertain language of the statute. The statute of Oregon to which we have referred, which is also the law of a number of other states, is exact in its terms. The mortgage is valid for one year from the day when it is filed; it then ceases to be valid unless it is renewed within the thirty days next preceding. The language is so specific and definite that it needs no construction, and there is no chance of falling into error concerning its meaning. Accordingly it is held that the renewal must be made within the thirty days, and that an attempted renewal before the commencement of that period, or after its termination is nugatory. *Cooper v. Koppes*, 45 Ohio St. 625; *Newell v. Warner*, 44 Barb. 258; *Rice v. Kahn*, 70 Wis. 323. Our statute names no day beyond which the mortgage, without the sworn statement shall be invalid. It fixes no period within which the statement shall be filed, or after which its filing will be too late. It provides that from the time the mortgage is recorded, it shall be good and valid until the mortgage debt is due, on condition that there is recorded annually a certain sworn statement of the mortgagee; but on, or after, or before what time it must be recorded, or how long after the mortgage has been recorded the first statement must be filed, the statute does not say. In undertaking to determine when the mortgagee must act, we have nothing to assist us but the word "annually." The definiteness of the idea

which that word may convey, depends upon the connection in which it is found. Alone it simply means each year. It may be so associated in a sentence as to mean the same day of the same month of each year; but in other connections it may mean during each year, or sometime in the course of each year; and in the absence of language giving precision of meaning to the term, it is to be understood in its most general sense. The loss by the mortgagee of the priority of right which his mortgage confers, by reason of his failure to comply with some subsequent condition, is in the nature of a forfeiture. Forfeitures are not regarded with favor, and, in its construction of language, a court will not exercise its ingenuity in behalf of persons seeking their enforcement. The decisions are that one claiming the benefit of a statute invalidating a mortgage, upon the failure of the mortgagee within the prescribed period to take the proper proceedings for its renewal, must bring his case strictly and technically within the terms of the law. *Meech v. Patchin,* 14 N. Y. 41; *Tremaine v. Mortimer,* 128 N. Y. 1; *Lowe v. Wing,* 56 Wis. 31.

To enable us to say that the execution in the hands of the defendant was a justification of his seizure and detention of the property, it must clearly appear that the plaintiff was in default in the filing of the statutory statement, and that her mortgage was therefore invalid. The statement must be filed "annually," and the statute nowhere undertakes to define or limit the meaning of the term. We think the intent of the statute is that the recording of the statement shall commence on or after the beginning of the second year of the mortgage, and that until that period the mortgage is good by virtue of its own record. If therefore the statement is recorded annually after the end of the first year, the statutory requirement is complied with. A statement recorded once a year would be recorded annually. Without expressing an opinion as to whether record made at any time during the year would subserve the purpose of the statute, we feel safe in saying that if the statement is filed within a reasonable time after the commencement of the year, it comes within the

scope of the statute, and is not obnoxious to its purpose. As no definite time is fixed, on or before which the record must be made, and as specific dates cannot be deduced from the unqualified term "annually," it necessarily follows that at least a margin of time, of reasonable extent, after the year begins, is allowable within which to comply with the statutory condition.

It is not questioned that the statement due the year after the recording of the mortgage was regularly and properly made and filed. The sole contention is that because no statement was recorded for the following year, the mortgage became a nullity. The mortgage was recorded on the 3d day of November, 1892. Except as against the mortgagor, and persons having actual notice of its existence, it did not take effect, or become a mortgage, until that day; and in inquiring when a default in the filing of the statement would occur, we must calculate from that day. On the 3d day of November, 1894, the second year of the mortgage would expire. The execution was levied on the 20th day of November, 1894, seventeen days after the beginning of the third year. On the latter date the second annual statement had not been filed; and the question is, had the mortgage, by reason of the intervening time become invalid when the levy was perfected? We are not undertaking to say that the recording of the statement on any day of each year would not be an annual recording of it within the meaning of the law; but on the supposition that it must be filed within a reasonable time from the beginning of each successive year, was the period of seventeen days an unreasonable time? What, in general, is a reasonable time is not determinable by any fixed rule. In a given case the question is largely controlled by the character and circumstances of that case; and, among other things, an important consideration is the necessity or non-necessity of diligence, as appearing in the nature and facts of the case. There was nothing in the nature of this case, and there was nothing in its facts which made it the duty of the plaintiff to have her statement on record before

the execution was levied. The execution creditors had not been induced to change their position by reason of her delay. They did not give credit to Rockwell because they thought his property was no longer held by the mortgage. The indebtedness to them was contracted before the time when, in any view, the statement could have been legally filed; and there was, therefore, nothing which imposed upon the plaintiff any duty of diligence in their favor. There is no requirement of the statute, and there is no inference to be drawn from its language, upon which we could say that the plaintiff's inaction for seventeen days, or even for a much longer period, would impair her rights in the property, or lessen the force and effect of her mortgage; and there were no special facts which added anything to her statutory duty. Our conclusion is that at the time of the levy, the mortgage was in full force, and the legal title to the property was in the plaintiff. The levy itself was a breach of the conditions of the mortgage, and entitled her to the immediate possession of the property, and the sheriff in seizing it was a trespasser.

Some other questions are discussed by counsel, which, in view of our opinion upon the main question, are unimportant, and the determination of which one way or the other, would not affect our decision.

We find no error which would warrant us in reversing the judgment, and we therefore order its affirmance.

*Affirmed.*