# RICHARD G. P. VALLANCEY v. MARTHA HUNT and John C. Hunt.

(— L.R.A.(N.S.) —, 129 N. W 455.)

### Sales — Conditional Sale.

1. In an action by the assignee of a mortgage to recover possession of the mortgaged chattels, the mortgagors contended that such chattels were sold to them under a conditional sale merely, and that such conditional sale never became absolute. Hence, that such mortgage does not confer upon plaintiff a special property in such chattels, nor the right to the possession thereof. *Held:* that the evidence discloses that such conditional sale subsequently became absolute, and· such contention is therefore untenable.

### Claim and Delivery — Counterclaim and Set-off — Pleading.

2. In claim and delivery by a mortgagee, or his assignee, to recover possession of the mortgaged property which was sold to defendant, and the mortgage given to secure the purchase price thereof, defendant may counterclaim or set-off damages arising from a breach of the warranty of the goods sold, but the matter constituting such defense, set-off, or counterclaim must be specially pleaded in the answer, and cannot be proved under a general denial.

### Action by Assignee — Waiver — Set-off and Counterclaim.

3. Where the debtor by his conduct induces the assignee to believe that the obligation will be met, and that there is no defense thereto, he will be held to have waived the right to avail himself of a set-off against the assignor in an action by the assignee.

Opinion filed December 31, 1910.

Appeal from District Court, Rolette county; *Honorable John F. Cowan,* J.

Action by Richard G. P. Vallancey against Martha Hunt and John C. Hunt.· From a judgment in favor of defendants, plaintiff appeals.

Reversed, with directions.

*W. H. Thomas* and *Skulason & Burtness,* for appellant.

New matter must be specially pleaded. Piercy v. Sabin, 10 Cal. 22, 70 Am. Dec. 692; Bliss, Code Pl. §§ 323, 339, et seq.; Fitnam, Trial Proc. § 567; Iselin ·v. Simon, 62 Minn. 128, 64 N. W. 143;

Note.—As to rights and liabilities of vendor and vendee by conditional sale generally on default of payment, see note in 32 L.R.A. 455.

1 Enc. Pl. & Pr. p. 830; Reynolds v. Reynolds, 45 Mo. App. 622; Riggins v. Missouri River Ft. S. & G. R. Co. 73 Mo. 598.

To rescind a contract, one must act with reasonable despatch, before third party's rights intervene. Burton v. Stewart, 3 Wend. 236, 20 Am. Dec. 692; Whitcomb v. Hardy, 73 Minn. 285, 76 N. W. 29; Grymes v. Sanders, 93 U. S. 55, 23 L. ed. 798, 10 Mor. Min. Rep. 445; Hayward v. Eliot Nat. Bank, 96 U. S. 611, 24 L. ed. 855; McLean v. Clapp, 141 U. S. 429, 35 L. ed. 804, 12 Sup. Ct. Rep. 29; Lockwood v. Fitts, 90 Ala. 150, 7 So. 467; Johnson v. Whitman Agri. Co. 20 Mo. App. 100; Booth v. Ryan, 31 Wis. 45; Thomas v. McCue, 19 Wash. 287, 53 Pac. 161; Aultman, M. & Co. v. Mickey, 41 Kan. 348, 21 Pac. 254; Hercules Iron Works v. Dodsworth, 57 Fed. 556; Benjamin, Sales, 1899 ed. p. 736; J. I. Case Threshing Mach. Co. v. Vennum, 4 Dak. 92, 23 N. W. 563; Kingman v. Watson, 97 Wis. 596, 73 N. W. 438; James v. Bekkedahl, 10 N. D. 120, 86 N. W. 226; Minnesota Thresher Mfg. Co. v. Lincoln, 4 N. D. 410, 61 N. W. 145.

*C. R. Gailfus* and *Burke, Middaugh, & Cuthbert,* for respondent.

To constitute estoppel there must have been a duty to speak, and the adverse party must have been misled. 16 Cyc. Law & Proc. p. 770; Smith v. Roach, 59 Mo. App. 115; Blair v. Wait, 69 N. Y. 116; Welland Canal Co. v. Hathaway, 8 Wend. 480, 24 Am. Dec. 51; Modern Woodmen v. Davis, 184 Ill. 236, 56 N. E. 300; Supreme Tent, K. M. v. Stensland, 206 Ill. 124, 99 Am. St. Rep. 137, 68 N. E. 1098; Combs v. Cooper, 5 Minn. 254, Gil. 200; Jennings v. Todd, 118 Mo. 296, 40 Am. St. Rep. 373, 24 S. W. 148; Brookhaven v. Smith, 118 N. Y. 634, 7 L.R.A. 755, 23 N. E. 1002.

CARMODY, J. Action to recover the possession of personal property consisting of a threshing machine and traction engine. Plaintiff bases his right to recover the possession of such property under a chattel mortgage dated September 3, 1901, and given to secure the payment of a promissory note for the sum of $645, executed and delivered by defendant to one James O'Loughlin on said date, and transferred to plaintiff prior to the commencement of the action. The complaint alleges the execution and delivery of said note and mortgage by defendant to O'Loughlin, and the assignment thereof by the

latter to the plaintiff, as aforesaid. It also alleges nonpayment of the note, a demand for the possession of the property, and that defendants wrongfully refused to surrender possession thereof to the plaintiff. The prayer is in the usual form. The answer is a general denial merely.

At the trial defendants, over plaintiff's objection, were permitted to show that such note was given to O'Loughlin as a portion of the purchase price of the threshing machine and engine described in the mortgage, and that the oral agreement between defendants and O'Loughlin was to the effect that if the machine, after a fair trial, did not work satisfactorily, all papers delivered by defendants to O'Loughlin representing the purchase price of the rig should be returned to defendants, and defendants should return such rig to O'Loughlin. Defendants also were permitted to prove that such machine did not work satisfactorily, and that they, from time to time, notified O'Loughlin thereof. The proof shows, however, that the defects complained of were remedied from time to time, and that defendants have never returned the rig, but on the contrary used it during the entire threshing seasons of 1901, 1902, 1903, and several seasons thereafter. Defendants also were permitted to show, over plaintiff's objection, that they were induced by O'Loughlin to keep the machine under the promise that he, O'Loughlin, would make good to them all the damages which they suffered by reason of the defects aforesaid, and they were permitted to prove that O'Loughlin warranted the machine to be a good machine in every respect; that there was a breach of such warranty, and that the damages on account of such breach or warranty exceed the amount due on said note. At the conclusion of the testimony both parties moved for a directed verdict, whereupon the jury was excused from further service, and the court in due time made findings of fact and conclusions of law favorable to defendants, and ordered the action dismissed. From the judgment rendered on such findings and conclusions, plaintiff appeals.

Numerous assignments of error are urged by appellant's counsel, but those relied upon for a reversal of the judgment may be summarized as follows:

1. The alleged improper admission under the general denial of evidence duly objected to.

2. Error in holding that the contract of sale was conditional, and not absolute.

3.  That defendants waived their right to urge any of the defenses urged by them, and as to plaintiff they are estopped to urge such defenses.

Regarding the defense of conditional sale, it is, we think, entirely clear from the record that, even if the sales contract was conditional when made, that it became an absolute sale when defendants were induced to keep the machinery under the promise on O'Loughlin's part that he would make good to them all damages suffered by reason of defects in the machinery or breach of warranty.

The defendant John C. Hunt testified that he gave to O'Loughlin, as a part of the consideration for the purchase price of this machinery, deeds to three quarter sections of land, and that O'Loughlin agreed to hold such deeds, and not place them of record until Hunt had an opportunity to try the machine; that thereafter, and in the month of September, Hunt learned of the fact that O'Loughlin had placed said deeds on record, but he never at any time protested or objected thereto, but on the contrary continued to use the threshing rig throughout the threshing season, not only of that year but for four or five years thereafter; not only this, but he paid one note given as a portion of the purchase price of said rig and paid the interest on the $645 note; not only this, but he was present at the time the note in suit was indorsed by O'Loughlin to plaintiff, and he actually handed the note to O'Loughlin for the purpose of indorsement over to plaintiff.  All of these acts on defendant's part are wholly inconsistent with his theory that such sale never became absolute, and they unmistakably show an executed sale.  The sale having become an executed contract, it follows that plaintiff, as the assignee of the note and chattel mortgage, which are past due and unpaid, has a special property in such separator and engine, and is entitled to the possession thereof for the purpose of foreclosing the chattel mortgage, unless defendants have established a legal defense thereto, and this brings us to the question whether, under the general denial in the answer, it was error to permit defendants to prove a warranty, a breach thereof, and damages resulting from such breach.  We are entirely clear on principle and authority that such evidence was wholly

inadmissible. Manifestly, such defense consisted of new matter, and must be specially pleaded. It was in the nature of a set-off or counter-claim. It did not directly tend, in the least, to deny or refute any of the allegations of the complaint. The authorities are practically unanimous to the effect that such a defense cannot be proved under a general denial.

In 31 Cyc. Law & Proc. p. 697, it is said: "A counterclaim or set-off must, under Code procedure, always be specially pleaded." Citing many authorities from Code states, including Hogen v. Klabo, 13 N. D. 319, 100 N. W. 847. In 34 Cyc. Law & Proc. p. 1417, the correct rule regarding the right of a defendant in a replevin action to interpose a set-off or counterclaim is stated as follows: "Since the adoption of Codes in most of the states, the doctrine of set-off and counterclaim has undergone much change. At first counterclaims were held not to be available in any action for a tort, and therefore not in replevin, which sounds in tort. But this rule has been so far modified as to allow the interposition of a counterclaim in the full sense of the Code, whether arising on contract or based upon a tort in an action of replevin, whenever such counterclaim is founded upon a cause of action arising out of the transaction set forth in the complaint as the foundation of plaintiff's claim, or whenever it is connected with the subject of the action." In the note at the bottom of the page is the following: "In replevin by a mortgagee to recover possession of the mortgaged property, which was sold to defendant, and the mortgage given to secure the purchase price thereof, defendant may counterclaim damages arising from a 'breach or warranty of the goods sold. McCormick Harvesting Mach. Co. v. Hill, 104 Mo. App. 544, 79 S. W. 745; Wilson v. Hughes, 94 N. C. 182; Minneapolis Threshing Mach. Co. v. Darnall, 13 S. D. 279, 83 N. W. 266; Aultman Co. v. McDonough, 110 Wis. 263, 85 N. W. 980." Many authorities are therein collated holding that, in an action of replevin, defendant may plead matters by way of set-off and counterclaim. Why such holding, if, as here contended, all such matters may be proven under a mere general denial? Expressions may be found in many cases to the effect that, under a general denial, defendant may prove any defense tending to refute any of the material allegations in the complaint, but it will be found that almost invariably where such

expressions were used the courts were dealing with defenses in the strict technical meaning of the word, as, for instance, in Dewey v. Bobbitt, 79 Kan. 505, 100 Pac. 77, where the defense was failure of consideration; or, as in Payne v. McCormick Harvesting Mach. Co. 11 Okla. 318, 66 Pac. 287, where the defense was fraud and deception in obtaining the mortgage under which plaintiff sought to recover the property, or, as in Wylie v. Marinofsky, 201 Mass. 583, 88 N. E. 448, where the defense was that the plaintiff, through his agent, had sold the property to defendant. In the latter case, which was an action of replevin to recover a horse, among other things it was said: "The plaintiff, in order to prevail, must establish by a preponderance of the creditable evidence that he is at least entitled to the possession of the property in question. . . . The burden of proving this proposition rests on him throughout the trial. In the present case the answer of the defendant, which was a general denial, rendered competent any evidence which tended to controvert this contention of the plaintiff. . . . The plaintiff asserted ownership as the foundation of her right to possession. She assumed, therefore, the burden of proving title in herself. This burden did not shift. Indeed, the burden of proof does not shift under the law of this commonwealth. . . . When the plaintiff has closed his case, defendant may then attack it. If he merely introduces evidence which breaks down the case of the plaintiff, he assumes no burden of proof. In a replevin case he may attempt to show that the plaintiff never had title, or has disposed of his title. But this is still merely an attack upon the plaintiff's case, namely, his right to immediate possession of the property. . . . He does not thereby raise a new technical issue. His evidence directed to these points is all admissible under a general denial, and does not require specification in the answer. . . . The defendant undertook to do no more in this case. He did not defend on any ground of confession and avoidance; he asserted facts directly at variance with those proffered by the plaintiff. It was analogous to the familiar defense in actions of contract, that a different contract from that claimed by the plaintiff was in fact made, which is provable under a general denial, and as to which the burden is not on the defendant, but continues on the plaintiff. Starratt v. Mullen, 148 Mass. 570, 2 L.R.A. 697, 20 N. E. 178; Phipps

v. Mahon, 141 Mass. 471, 5 N. E. 835. If the defendant sets up any independent defense outside the issue raised by the pleadings of the plaintiff, then he assumes the burden of proving that distinct and independent allegation. Sayles v. Quinn, 196 Mass. 492, 82 N. E. 713; Powers v. Russell, 13 Pick. 69. But the evidence by the defendant in the present case, that the plaintiff's agent, either by original authority or subsequent ratification and adoption, has sold the horse to him, went to the root of the plaintiff's claim, which it was fundamentally necessary for her to establish, that she was the owner and entitled to possession."

In Aultman Co. v. McDonough, 110 Wis. 263, 85 N. W. 980, the facts were quite analogous to those in the case at bar, but the defendant specially alleged, by way of counterclaim, the matters which defendants were permitted in the case at bar to prove under the general denial. We quote from the opinion: "As indicated in the statement, the plaintiff, as mortgagee, brought this action of replevin by reason of the defendant's default in payment of a part of the purchase price of the machinery covered by the mortgage. The right to maintain such an action is undisputed. Gage v. Wayland, 67 Wis. 566, 31 N. W. 108; Rice v. Kahn, 70 Wis. 323, 35 N. W. 465; Hill v. Merriman, 72 Wis. 483, 40 N. W. 399. Of course, the plaintiff's special interest in the property is limited by the amount of the mortgage debt. Gage v. Allen, 84 Wis. 323, 54 N. W. 627.

"The defendant, by way of counterclaim, sought to extinguish or reduce such special interest by alleging damages for the breach of warranty on his purchase of the engine covered by the mortgage, and also damages for loss of time and expenses in trying to operate the engine returned to the plaintiff, and for which the engine covered by the mortgage was, in part, taken in exchange. Such counterclaim arose out of the transaction set forth in the complaint as the foundation of the plaintiff's claim, and is connected with the subject of the action, within the meaning of the statute, especially as the plaintiff is a nonresident. Stats. 1898, subd. 1, 3, § 2656."

It is true the court nowhere says that such defenses might not have been proven under a general denial, but, if such is the court's understanding, it seems queer that they should waste time in giving reasons why such counterclaim was properly interposed. A very clear

statement of what defenses are admissible under a denial, and what are new matter and must be specially pleaded, may be found in Pomeroy's Code Remedies, 3d ed. § 673. See also Id. §§ 686, et seq. Professor Pomeroy, among other things, says: "All facts which directly tend to disprove any one or more of these averments may be offered under the general denial; all facts which do not thus directly tend to disprove some one or more of these averments, but tend to establish a defense independently of them, cannot be offered under the denial; they are new matter, and must be specially pleaded." § 673.

If respondents' contention be sound that they could prove these damages without alleging them by way of a set-off or counterclaim, then it would inevitably and logically follow that in claim and delivery actions every conceivable defense, whether consisting of new matter or not may be proved under a general denial, and that consequently set-offs and counterclaims are total strangers to an answer in such cases. Such a doctrine is contrary both to the letter and spirit of all rules of pleading. The books are full of cases in which set-offs and counterclaims have been upheld in actions of this nature, but they were specially. pleaded in all except a very few, which we will here notice.

The appellate court of Indiana in Aultman & Co. v. Forgey, 10 Ind. App. 397, 36 N. E. 939, seems to have squarely held that a breach of warranty constitutes matters of defense, and is available under a general denial without an affirmative plea. The opinion is clearly unsound, and is not supported by any of the authorities therein cited and relied on.

Another case apparently supporting respondents' view is that of Davis v. Culver, 58 Neb. 265, 78 N. W. 504. The opinion was written by Ragan, C. That was a replevin action, the answer consisting of a general denial. One defense proved was that the note held by plaintiff was tainted with usury, and it was very properly held that such fact was admissible under the general denial. Such defense directly tended to show that the note was void. Defendant was, however, permitted to prove an indebtedness from plaintiff to defendant for blacksmith work, and the court upheld the ruling, but in so doing used this language: "It is insisted on the argument that this $2.75 due from Davis to Culver could not be set off in this action

against what was due on the note. We fail to appreciate the force of this contention. If this was a suit at law upon the note, Culver could have pleaded as a set-off the $2.75 due him from Davis, the holder of the note. In order for Davis to recover in this action, it was incumbent upon him to show that there was some amount due him from Culver on the note when the action was brought; and under a general denial it was competent for Culver to show that he was entitled to be credited for the work he had done for Davis, and that therefore there was nothing due Davis on the note." The writer of the opinion in that case gives as a reason why Culver could prove as a set-off this blacksmith bill under a general denial, the fact that if the suit was on the note Culver could have *pleaded as a set-off* such blacksmith bill. We fail to appreciate the logic of such reasoning.

The case of Plano Mfg. Co. v. Daley, 6 N. D. 330, 70 N. W. 277, is strictly in line with our views above expressed. It was there merely held that, under a denial, fraud or mistake in the execution of the mortgage under which plaintiff based his title and right to possession could be proved. Of course such matters were strictly defensive, as they directly tended to break down plaintiff's alleged title and right to possession.

Aultman, M. & Co. v. Stichler, 21 Neb. 72, 31 N. W. 241, when carefully analyzed, merely announces the same rule. The defense in that case was, in effect, a failure of consideration for the mortgage in question.

In Lane v. O'Toole, 8 N. D. 210, 78 N. W. 77, the defense was that the contract under which plaintiff based his right of recovery never took effect.

But one more question remains to be disposed of, which is that defendants waived their right to urge any of the defense urged by them, and as to plantiff they are estopped to urge such defense.

Plaintiff testifies that he became the owner of the note about November 15th, 1901; that afterwards, and on or about the 7th day of December, 1901, the note was indorsed to him by O'Loughlin; that on that day he paid $1,000 to O'Loughlin; that the $1,000 was not paid for this note alone but as part consideration for the land and the entire transaction, and at that time the land was transferred to plaintiff.

Defendant Hunt was present at the time the note was indorsed, and paid plaintiff a $235 note that plaintiff purchased from O'Loughlin as part of the transaction in which he, plaintiff, acquired the note in controversy and the land; also paid plaintiff the interest to December, 1901, on the note in controversy, and in the fall of 1902 paid plaintiff the interest on the said note to December, 1902. Defendant Hunt testifies that plaintiff and O'Loughlin figured the amount due on the $235 note and the interest on the note in controversy to December, 1901, and defendant gave a check for it; says he called plaintiff's attention to the fact that the interest was not indorsed on the note in controversy, and that plaintiff indorsed it; says that plaintiff told him that he, plaintiff, had taken up the deal, and that he was getting the land from O'Loughlin; that plaintiff and O'Loughlin made out a new note to take the place of the note in controversy, and asked defendant Hunt to sign it, but he refused, and asked plaintiff if it would not do just as well if O'Loughlin indorsed the note in controversy to plaintiff as for defendant to sign the new note, and plaintiff said if O'Loughlin indorsed it it would be all right, and defendant Hunt handed it to O'Loughlin, who indorsed it; that before plaintiff took up the deal, Michael O'Loughlin told defendant that he was going to bring a man out to look at the land, and asked defendant to tell him about it, and not put any cloud on it, but make it as good as possible; that O'Loughlin came, introduced plaintiff to defendant Hunt, who may have said at that time that the machine was running all right; that he, defendant, knew the note was past due at the time O'Loughlin indorsed it; if it had not been, there would have been a kick made at that time.

It seems to us that defendants, as far as plaintiff is concerned, waived any defense they might have had to the note in controversy. Defendant John C. Hunt knew O'Loughlin put the deeds on record in violation of his agreement; knew that plaintiff had taken up the deal from O'Loughlin, in fact was present when the deal was closed; paid a $235 note to plaintiff on that day; paid the interest on the note in controversy to December 7, 1901; paid the interest the next year; when requested to sign a new note to take the place of the note in controversy, asked plaintiff if the present note was not all

right if O'Loughlin indorsed it.  Plaintiff said it was, and that he, defendant, handed the note to O'Loughlin, who indorsèd it.

In 34 Cyc. Law & Proc. p. 750, it is said: "If the debtor promise the assignee of a chose in action to pay the debt to him, he cannot afterward avail himself in set-off of claims he may have against the assignor, as such a promise amounts to a waiver of any right of set-off he may have against the assignor.  Similarly, the debtor by his conduct in inducing the assignee to believe that the obligation will be met, and that there is no defense thereto, may be held to have waived the right to avail himself of a set-off against the assignor in an action by the assignee, particularly where the assignee was induced to purchase the obligation in consequence of representations by the obligor that he had no defense to it."  The defendant Hunt apparently studiously avoided disclosing to plaintiff any information regarding these alleged set-offs to the note.  Batavian Bank v. Minneapolis, St. P. & S. Ste. M. R. Co. 123 Wis. 389, 101 N. W. 687; King v. Fowler, 16 Mass. 397; Downer v. Read, 17 Minn. 493, Gil. 470; Lee v. Kirkpatrick, 14 N. J. Eq. 265; Tylee v. Yates, 3 Barb. 222; Buck v. Wood, 85 Me. 204, 27 Atl. 103.

In King v. Fowler, supra, the court says: "The set-off claimed by Fowler cannot be allowed; for it would be manifestly unjust.  The assignment by King to Ives was for a valuable consideration; and Fowler, having had notice that it was about to be made, should have given notice of his counterdemand against King, in season to prevent Ives from giving up his remedy upon execution.  Instead of which he was silent not only then, but on the day when the assignment was made, having had previous notice for a week.  Further, after formal notice that the assignment was actually made, he does not object, but conceals his intention, until a suit is commenced against him and the other defendants by Ives.  This conduct must be considered in equity, as a waiver of any right to set off, and an acquiescence in the assignment."

In Tylee v. Yates, supra, which was an action by the assignee of a promissory note, the court says: "A party who sees his obligation transferred to a bona fide purchaser for a valuable consideration, without giving notice of any defense or set-off which he may claim against it, is estopped from setting up any defense against such purchaser."

In Lee v. Kirkpatrick, supra, which was an action to foreclose a mortgage, defense was that the mortgage was excessive. The court says: "As a general rule, the assignee, it is conceded, takes the mortgage subject to all the equities subsisting against it in the hands of the original mortgagee. He can recover no more than the amount actually due upon the mortgage at the date of the assignment. But if the mortgagor, when applied to for information, conceals his equitable defense; if he misleads the party by word or acts as to the amount due upon the bond; nay, if he stands silently by and permits a party in good faith to pay his money and take an assignment for its full nominal value,—he cannot afterwards set up his equitable defense against the claim of the mortgage for the payment of the entire debt. The defendant was applied to by the complainant before he took the mortgage, and apprised that the complainant was about to take it for its full value. If the defendant had any equitable defense against it, he was bound then and there to make it known. He was in a situation where he was bound to speak. His silence was constructively fraudulent."

In 16 Cyc. Law & Proc. p. 722, it is said: "Estoppel by misrepresentation or equitable estoppel is defined as the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person who in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right either of contract or of remedy. This estoppel arises when by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence, induce another to believe certain facts to exist, and such other rightfully relies and acts on such belief so that he will be prejudiced if the former is permitted to deny the existence of such facts. It consists in holding for truth a representation acted upon, when the person who made it, or his privies, seek to deny its truth to deprive the party who has acted upon it of the benefit obtained."

The trial court should have granted plaintiff's motion to direct a verdict in his favor, as prayed for.

The judgment is reversed and the District Court is directed to enter a judgment in favor of plaintiff as prayed for in his said motion. All concur, except MORGAN, Ch. J., dssenting.

MORGAN, Ch. J. (dissenting). I respectfully dissent from all the conclusions reached by the court in this case. I do not disagree with much that is said in the opinion, nor with most of the cases cited in support of the conclusion reached. The proof does not show that the defects in the machine were remedied. The evidence is practically undisputed that the machine failed to do good work up to and including the year 1905, when this action was commenced. The trial court expressly found that such defect continued until 1905.

This is an action at law, decided by the court after each party had moved for a directed verdict, and that fact gives to the court's findings the weight that follows the verdict of a jury. This fact renders the statement in the opinion, that the defects were all remedied, wholly unfounded, and if the record showed a conflict on this question, the findings could not be assailed under prior decisions of this court.

So far as the question of estoppel is concerned, there is no evidence that the plaintiff relied upon any act or declaration of the defendant Hunt. The evidence also shows that plaintiff has not been damaged, if such reliance was placed on Hunt's acts. O'Loughlin indorsed the note, and would be responsible to plaintiff as holder under such indorsement. Two essential elements of estoppel are therefore wanting, —reliance on acts or representations, and resultant damage.

In regard to the conditional sale having become an absolute sale, I will only say that the payment of the note and retention of the machine until the defects were remedied were done under the express request and consent of O'Loughlin each year from the sale, including the year 1904. If such request to retain the machine was renewed each year, it is not apparent how the conditional sale became absolute.

So far as the admission of evidence under a general denial is concerned, there seems to be a misapprehension as to the nature of the action. The issue in the case is the right to the possession of the machine. In other words, Does the defendant wrongfully detain the possession thereof?

There is no question of counterclaim or set-off involved. The defendant maintains that his possession is not wrongful, because it is in pursuance of O'Loughlin's request and express consent. This fact, therefore, if proven, directly controverts the allegation of the complaint is that plaintiff is entitled to the possession of the property. The plaintiff purchased the note after maturity, and any defense to the mortgage or note can be maintained as against plaintiff that could be maintained against O'Loughlin. There is no question of new matter in this case. The contract that the defendant should retain the machine until all the defects were remedied refutes and controverts the proof, on plaintiff's part, that there was a sale of the machine to defendants. This brings the case, in my judgment, within the principle mentioned in the majority opinion, that anything may be shown under a general denial that controverts the material allegations of the complaint, and in this case, that is plaintiff's right to the immediate possession of the property.

I shall not cite additional authorities than those referred to in the majority opinion. Every text-book on pleading or on replevin establishes this principle as sound, as I understand them.

The direction for judgment in plaintiff's favor is also erroneous. All that this court should do is to reverse the judgment of the district court and remand the cause for further proceedings.

In my opinion the judgment should be affirmed.