BATAVIAN BANK, Respondent, vs. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY, Appellant.

*November 21—December 13, 1904.*

*Assignment of accounts: Rights of offset: Agency: Apparent authority of agent: Evidence.*

1. Plaintiff's assignor was in the habit of making a written assignment of its monthly account against defendant for castings to the plaintiff bank, and sending the bill so assigned to the purchasing agent of defendant, who returned the same with a signed statement acknowledging the receipt of such account against defendant, stating amount, date and the fact of its assignment. The writing further stated: "The net amount thereof, after deducting cost of transportation and other reasonable charges, to be paid to said bank when adjusted and due." At the same time plaintiff's assignor was purchasing from defendant scrap brass, and, at the time said assignor made a voluntary assignment, defendant's accounts for scrap brass amounted to one-half of the bills for castings. In an action on such assigned accounts defendant sought to set off the value of the scrap brass against such accounts, and offered to allow judgment to be taken for the balance. *Held,* that the promise to pay the net amount of such accounts "after deducting cost of transportation and other reasonable charges," excluded other deductions.
2. In such case, the words "other reasonable charges" do not refer to a setoff for the scrap brass sold.
3. In such case, the evidence of a long-continued course of business dealing in regard to such accounts by the purchasing agent of defendant, is *held* sufficient to create an apparent authority in the purchasing agent to make such agreement, on which plaintiff had a right to rely, notwithstanding the by-laws of the defendant conferred no such power.

APPEAL from a judgment of the circuit court for La Crosse county: J. J. FRUIT, Circuit Judge. *Affirmed.*

This is an action to recover on nine separate accounts for merchandise sold by the John James Company, a manufacturing corporation of La Crosse, to the defendant between March, 1902, and January, 1903, which accounts were sev-

erally assigned to the plaintiff with the knowledge and written consent of the defendant; said accounts amounting in the aggregate to $5,529.53.    The defendant admits the sale of the goods, but seeks to set-off against the accounts certain sums due it for scrap brass sold by it to the John James Company, amounting in all to $1,871.67, with interest, and offers to allow judgment to be taken for the balance.    The action was tried by the court, and the facts were not seriously in dispute.    The evidence showed that the John James Company, at the time the accounts accrued, was operating a foundry at La Crosse, and had been in that business for many years prior; that since 1890 the John James Company had been manufacturing and selling to the defendant brass castings and other articles, rendering monthly bills therefor, which bills were delayed in payment for several months; that, in order to obtain credit at the plaintiff's bank, the John James Company from about the year 1890 was in the habit of making a written assignment of each monthly bill to the bank, and sending the bill so assigned to the purchasing agent of the railroad company, with a written instrument attached, in the following form (blanks being properly filled):

"Please Sign and Return.

"Received ...... (date) ...... of John James Company their invoice and account against the Minn. St. Paul & Sault Ste. Marie R. R. Company, for ...... Dollars, dated ...... and assigned to Batavian Bank of La Crosse, Wis.    The net amount thereof, after deducting cost of transportation and other reasonable charges, to be paid to said bank when adjusted and due.

"................

"(Signature of Purchasing Agent);"

—that the purchasing agent in each case signed and returned the said instrument, with the invoice, to the John James Company, and that said company regularly took the same to the plaintiff bank, gave its note to the bank for the amount of the invoice, and received credit therefor, and de

livered the invoice, with the accompanying instrument, to the bank, as collateral for such loan; that the defendant company in due time sent a draft to the John James Company for the amount of each invoice, payable to the order of the bank, which draft the James Company delivered to the bank in payment of the loan, and thereupon received back the note which it had given therefor; that this course of dealing took place regularly nearly every month until the failure of the John James Company, in February, 1903; that the John James Company during all this time purchased scrap brass of the railroad company, their bills for such scrap brass amounting to about one half of the bills for castings, and that the James Company generally paid for such scrap brass by drafts purchased of the bank when the railroad company sent a draft in payment for an invoice of castings; that in February, 1902, the plaintiff had in its possession eight of such invoices, with accompanying assignments, amounting to over $3,000, and wrote to the defendant, asking when they might expect to be paid therefor, and whether there was any claim or set-off against them, and defendant's auditor replied, recognizing the correctness of invoices amounting to $2,539.53, and charging up against them three bills for scrap, and inclosing a draft for a balance of $494.50; that the bank refused to receive said draft, and returned the same to the John James Company, and that John James, president of the company, thereafter saw some of the officers of the defendant with regard to the matter, and some time afterwards the defendant paid the assigned accounts to the bank in regular course as before; that when the John James Company made an assignment for the benefit of its creditors in February, 1903, the bank owned the invoices and assignments in question, with accompanying written instruments attached, and had acquired the same in the usual course of business, as before stated; that it filed no claim in the assignment proceedings for the amounts represented by said invoices.

The trial court, upon these facts, concluded that the plaintiff was entitled to recover the full amount of the invoices, with interest, and that the setoffs claimed by the defendant should not be allowed, and from judgment upon these findings the defendant appeals.

*Alfred H. Bright,* for the appellant.

For the respondent there was a brief by *Woodward & Lees,* and oral argument by *G. M. Woodward.*

WINSLOW, J. We have been unable to see why the judgment rendered in this case should not be affirmed. It was entirely competent for the bank to take assignments of the invoices in question, and such assignments alone would transfer good title thereto, subject, of course, to all proper offsets which the defendant then had against the assignor. No consent on the part of the defendant was necessary to accomplish this result. But such assignments alone would be a doubtful security, especially in view of the fact that the assignor was continually buying scrap on credit from the railroad company. It would seem almost a demonstration from the wording of the agreement itself that this was the very difficulty which the written agreement executed by the purchasing agent of the railroad company was intended to meet and correct. Obviously the purpose of that agreement was to make the assigned invoice better security; otherwise it was unnecessary. The bank evidently wished a direct acknowledgment of the account, and an agreement to pay the proceeds to itself instead of to the assignor. This is just what the written agreement executed by the purchasing agent and attached to each invoice does in unmistakable words. Not only this, but the promise is to pay the net amount thereof "after deducting cost of transportation and other reasonable charges." This excludes other deductions. Certainly the words "other reasonable charges" cannot by any process of reasoning be logically held to refer to set-offs for goods sold.

When the bank received the assigned invoice, with this agreement attached, and loaned money to the James Company on the faith thereof, its right to recover thereon in the event of nonpayment of the loan rests upon the principles of the law of contracts, which are so well understood as to require no further statement.

But it is said that the purchasing agent had no authority to make these agreements, and evidence was introduced tending to show that the by-laws of the company conferred no such power upon him, and that he had received no express authority from his superior officers to execute such agreements. The testimony showed, however, that the purchasing agent was known as a general officer of the defendant; that he purchased all the material for the road on his own judgment, and that for twelve or thirteen years he both purchased the brasses and sold the scrap, and made the agreements in question monthly; that there was no secrecy in these arrangements, but that, on the contrary, the items were entered in a separate account in one of the railroad books, called a "voucher register," with the credit entry, "Batavian Bank for brasses bought of the John James Co.;" and that each monthly account was thereafter in due time paid by check or draft in favor of the bank.

A course of business dealing by an agent so public and long continued as this is surely sufficient to create an apparent authority which may be safely relied upon by one dealing with the corporation upon the faith thereof. *Ford v. Hill,* 92 Wis. 188, 66 N. W. 115.

*By the Court.*—Judgment affirmed.