No. 40,934

State Investment Company, a Corporation, *Appellee*, v. Cimarron Insurance Company, a Corporation, *Appellant*.

(326 P. 2d 299)

Opinion filed June 7, 1958.

*William Tinker*, of Wichita, argued the cause, and *Getto McDonald, Arthur W. Skaer, Hugh P. Quinn, William Porter, John E. Lancelot* and *Alvin D. Herrington*, all of Wichita, were with him on the briefs for the appellant.

*Evart Mills*, of McPherson, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

Wertz, J.: This was an action by a finance company against an insurance company for the recovery of unearned premiums on some

thirty canceled insurance policies which it financed. From a judgment in plaintiff's favor, defendant appeals.

The pertinent facts follow: State Investment Company, appellee (hereinafter referred to as plaintiff or finance company), is a McPherson corporation engaged in the business of financing individual purchases of insurance policies. Cimarron Insurance Company, appellant (hereinafter referred to as defendant or insurance company), is a Kansas insurance corporation. The Hammond Insurance Agency at all times pertinent to this action acted as defendant's agent to receive and accept applications for insurance and to collect premiums in the Kansas City, Missouri area.

All of the policies in question were issued by the defendant through the Hammond agency. The policy premiums were financed by the plaintiff. In each case the financing plan worked as follows: Plaintiff furnished Hammond with its financing forms, and upon sale of a policy Hammond certified that it had issued the policy, forwarding an executed premium payment agreement, together with the certificate, to the plaintiff. By the terms of the premium payment agreement the policyholder, in consideration of the premium payment by the finance company to the insurance company, assigned to the finance company any unearned premiums to which he might become entitled under the financed insurance policy. That assignment was contained in the following words:

"In consideration of the payment by the payee hereof to the insurance companies of the premiums for which this note is given, the undersigned hereby assigns to the payee any unearned premium to which he may become entitled under the insurance policies financed by reason of this note, as hereinafter provided."

Upon receipt of the payment agreement and certification from the insurance agent, plaintiff then sent a notice to the insurance company, asking it to verify the issuance of the policy and to agree to pay to the finance company the return or unearned premiums in the event of cancellation. The notice to the insurance company read in part as follows:

"You will take notice of the agreement with the assured . . . and your acceptance of this Installment Payment arrangement with the assured shall be construed as acknowledgment of our contract, and you hereby agree that in the event of any cancellation which will require surrender of any policy without unearned premium, for which the note is given, that you will first deduct the unpaid balance and remit that amount direct to the undersigned."

It was further provided that the gross premium would be mailed upon receipt of the insurance company's acknowledgment of the agreement. The insurance company then signed and returned the following acknowledgment to the finance company:

"Acknowledgment to The State Investment
Company      McPherson, Kansas

"As per your notice to us in regard to premium payment agreement on policy (ies) as above indicated, we hereby accept the obligations of that agreement in your behalf, and we will protect your interests by paying to you all return premiums and losses to the extent of the then existing balance due you on this policy (ies).

"Please remit full gross premium to [agent] upon receipt of this acknowledgment.                                    "[Cimarron Insurance Co., Inc.]"

The testimony indicated that the finance company considered the unearned premiums security for its loans, so that in the event the policy purchaser did not make proper payments to the finance company the policy would be canceled and the finance company would receive the unearned premiums to pay the balance owed for financing the purchase of the policy.

It was admitted that plaintiff knew nothing about the people who purchased the thirty insurance policies. All transactions were conducted through Hammond. Hammond wrote the policies, sent the executed agreements and certifications to the plaintiff, made collection of installment payments and remitted them to plaintiff. Hammond, as agent of the defendant, also received the premium payments from plaintiff and remitted them to defendant. All the policies in question were canceled before expiration, and defendant, by means of credits on Hammond's account, returned the unearned premiums to Hammond.

Plaintiff was unable to collect from either defendant or Hammond the return or unearned premiums on the thirty policies, and brought this action against the insurance company for recovery of the return premiums to the extent of the unpaid portions of its loans. Plaintiff alleged that it paid the financed portion of the insurance premiums in reliance upon defendant's agreement contained in its "acknowledgment." Defendant, in its answer, specifically denied that the persons named as policyholders in plaintiff's petition signed, executed or delivered promissory notes to the plaintiff, and denied the genuineness of the signatures appearing on any notes held by plaintiff. This denial was verified. Plaintiff, in reply, alleged that defendant was estopped from denying the sufficiency or execution

of the notes held by plaintiff, since it recognized the validity and sufficiency of the notes by executing the "acknowledgment"; that thereafter and in reliance thereon, plaintiff paid the premium loans to defendant and that defendant had not returned or tendered to plaintiff the amount of money so received by it.

No testimony was offered to establish the validity of the notes or the execution or genuineness of the signatures appearing thereon, with the exception of the so-called Quickway note and one small note.

After trial to a jury a general verdict was returned for the plaintiff. In answer to special questions, the jury found, *inter alia,* that the Hammond agency was the authorized agent of defendant for receipt of the proceeds of premium policy loans and that plaintiff paid these proceeds to Hammond as agent, in reliance upon its agreement with defendant as set out in the notification and acknowledgment. It found further that defendant owed the return premiums to plaintiff and the insured upon cancellation of the policies, and that defendant had credited these return premiums to Hammond for distribution to the persons entitled thereto.

Defendant contends that as a stranger to the insurance policies plaintiff's only claim to the unearned premiums on cancellation of the policies was by assignment from the insured, which assignment is found only in the notes or premium payment agreements from the insured to the plaintiff; that defendant put in issue the question of the valid execution of those notes by verified denial in accordance with G. S. 1949, 60-729, which placed on the plaintiff the burden of establishing the validity of the instruments. With the exception of the Quickway note, on which defendant admits plaintiff is entitled to recover $513.48, defendant contends that plaintiff failed to establish the validity of the notes on which its right by assignment rests and therefore it cannot recover. Plaintiff, on the other hand, contends that its right to recovery is based on the executed agreements or "acknowledgments" of defendant to pay plaintiff the return premiums on the canceled policies; that there was consideration for those agreements, in that plaintiff paid the premiums in reliance upon defendant's promises and defendant received the benefit of writing the policies and receiving the premiums, which it could not have done without plaintiff's financing.

The only question on appeal is whether plaintiff's right to recovery is based on the assignments contained in the policyholders'

notes, so that its failure to establish the authenticity of these notes and assignments bars it from recovery. We are of the opinion that plaintiff's right to recover the unearned premiums rests upon the contracts with the defendant found in defendant's executed acknowledgments. Since plaintiff does not claim as assignee of the policyholders, it was unnecessary for it to establish the validity of the assignments in the promissory notes.

In *Batavian Bank v. M., St. P. & S. S. M. R. Co.*, 123 Wis. 389, 101 N. W. 687, a bank brought an action to recover on accounts for merchandise sold to defendant by the John James Company, which accounts were assigned to plaintiff. Defendant admitted the sale but sought to set off sums due it from the John James Company. On each account the John James Company had sent the assigned bill to the defendant, attaching a written instrument to be signed and returned. In each case defendant's agent signed and returned the instrument, which read as follows:

"Received_____(date)_____of John James Company their invoice and account against the Minn. St. Paul & Saulte R. R. Company, for _____Dollars, dated_____and assigned to Batavian Bank of La Crosse, Wis. The net amount thereof, after deducting cost of transportation and other reasonable charges, to be paid to said bank when adjusted and due.

"(Signature of Purchasing Agent.)"

It was held that the written agreement constituted an independent contract between the plaintiff and defendant on which the plaintiff's right to recovery rested, so that defendant could not set off sums due it from the John James Company  The court declared that no consent on defendant's part would have been necessary to perfect plaintiff's rights as an assignee of the accounts. Obviously then the purpose of the written agreement or acknowledgment was to make the assigned invoice better security by giving the plaintiff a direct right of action on a contract; otherwise, the acknowledgment was unnecessary. The written agreement constituted a direct acknowledgment of the account and a contract to pay the proceeds to the plaintiff, and plaintiff's right to recovery in the event of nonpayment rested upon the principles of the law of contracts.

Generally speaking, an assignment becomes effective on the mutual assent of the assignor and assignee, although notice to the debtor is necessary to charge him with the duty of payment to the assignee. (*LePorin v. Bank*, 113 Kan. 76, 213 Pac. 650; 6 C. J. S.

Assignments, §§ 74, 100.) Once the debtor has notice of the assignment his consent is not necessary to charge him with the duty of payment to the assignee. (6 C. J. S., Assignments, § 75.)

Ordinarily, defendant's duty to pay plaintiff the unearned premiums would be perfected upon receipt of notice of the assignment by the policyholders to the plaintiff. The requirement of the execution of the acknowledgments by defendant was obviously intended to do more; otherwise, it was unnecessary and mere surplusage. The plaintiff evidently wished a direct agreement by the defendant to protect it in the case of cancellation of the policies. This is just what the wording of the acknowledgments accomplished in unmistakable terms. The defendant by terms of the acknowledgments accepted the obligations of the agreements in plaintiff's behalf and agreed to protect the plaintiff's interests by paying it the unearned premiums. Acceptance of the agreement's obligations and protection of the finance company's interests could mean only *additional* protection to the finance company; *i. e.*, the protection of an independent contractual arrangement to make the unearned premiums better security than the finance company would have as a mere assignee.

Defendant contends further that even if plaintiff's right of action is based on the executed acknowledgments, they are unenforceable for want of consideration. We find no merit in this contention.

In *Farmers Equity Coop. Ass'n v. Tice,* 122 Kan. 127, 251 Pac. 421, we held that any benefit, profit or advantage flowing to the promisor which he would not have received but for the contract, or any loss or detriment to the promisee is sufficient consideration to support the promise. (*Coder v. Smith,* 156 Kan. 512, 134 P. 2d 408; *French v. French,* 161 Kan. 327, 167 P. 2d 305.) Here plaintiff specifically notified defendant that the gross premiums would be mailed upon receipt of the executed acknowledgments. Thereafter, in reliance upon the acknowledgments, plaintiff suffered the detriment of making the premium payments. Defendant was benefited by writing the policies and receiving the premium payments. In view of plaintiff's notification and defendant's knowledge of the financing arrangements, it is reasonable to assume that such benefit would not have inured to defendant without the executed acknowledgments. Indeed, the jury found that the payments were made to defendant in reliance upon the acknowledgments.

In view of what has been said, the trial court did not err (1) in overruling defendant's demurrer to plaintiff's evidence, (2) in

overruling defendant's motion for judgment notwithstanding the verdict, and (3) in overruling defendant's motion for a new trial. The judgment of the trial court is affirmed.

It is so ordered.