No. 46,298

FARMERS & MERCHANTS STATE BANK of Derby, Kansas, *Appellee*, v. SNODGRASS AND SONS CONSTRUCTION CO., INC., *Appellant*.

(495 P. 2d 985)

Opinion filed April 8, 1972.

*Robert T. Cornwell*, of Fleeson, Gooing, Coulson & Kitch, of Wichita, argued the cause, and *John Matson*, of the same firm, was with him on the brief for the appellant.

*Joseph W. Kennedy*, of Morris, Laing, Evans & Brock, of Wichita, argued the cause, and *Justus H. Fugate*, of Aley, Fugate & Maben, of Wichita, was with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an action by a bank against a general contractor for breach of contract for failing to pay retainage to the bank. The case was tried to the court sitting without a jury. The trial court entered judgment in favor of the plaintiff, Farmers and Merchants State Bank, in the amount of $13,000 with interest. The appellant, Snodgrass and Sons Construction Company, Inc., was the defendant in the district court.

In entering judgment in favor of the plaintiff the trial court made extensive findings of fact and conclusions of law which set forth the controlling facts and the legal principles upon which the judgment in the trial court was based. The findings of fact and conclusions of the court are as follows:

"FINDINGS OF FACT

"1. The plaintiff, Farmers and Merchants State Bank of Derby, Kansas, is a banking corporation organized and existing under the laws of the state of Kansas, with its principal place of business in Derby, Sedgwick County, Kansas. Mr. Elwood Jones is president of plaintiff bank.

"2. The defendant, Snodgrass and Sons Construction Co., Inc., is a Kansas corporation with post office address in Wichita, Kansas. During the month of December, 1967, Mr. Victor M. Schimming was the secretary-treasurer of Snodgrass and Sons Co., Inc.

"3. The defendant, Jayhawk Services, Inc., was a Kansas corporation with post office address in Wichita, Kansas. Richard LaFoy, Jr. was president of Jayhawk Services, Inc. On June 20, 1968, Jayhawk Services, Inc. was duly adjudged a bankrupt and a trustee was duly appointed for this corporation.

"4. On April 24, 1967, Jayhawk entered a sub-contract agreement (defendant's Exhibit 10) with Snodgrass to furnish certain necessary labor, materials and equipment on a construction job known as Mulvane Schools (Unified School District # 263). This sub-contract was known as the mechanical contract.

"5. Under the provisions of the sub-contract agreement, Snodgrass agreed to pay Jayhawk the principal sum of the sub-contract by partial payments as the work progressed less retainages in the amount of 10% of payments due.

"6. Section 5 (b) and (d) of the sub-contract provided as follows:

" '(b) To submit to the Contractor on or before the 25th of the month estimates for partial payment for labor and materials delivered to the job site during the preceding month, and if required by Contractor shall submit receipts or other vouchers showing payment for labor and material to the date of estimate for partial payment. In the event Sub-Contractor does not furnish such receipts and vouchers, Contractor is authorized to pay said bills directly and deduct such sums from the estimate for partial payment.'

" '(d) To promptly pay when due for all labor and materials used and required in completing this contract, and to save Contractor harmless from any claim, lien, judgment, court costs and expenses incurred on account of Sub-Contractor's failure to comply with the terms of this contract.'

"Section 9 (a) of the sub-contract provided as follows:

" '(a) In the event of any default on the part of the Sub-Contractor hereunder, Contractor shall have the right after two (2) days written notice to terminate this contract and to complete the work required hereunder and charge the cost thereof to Sub-Contractor, crediting or debiting his account as the case may be when the work under this contract is fully completed and accepted, and such right of the Contractor shall not affect the right of the Contractor to recover damages for Sub-Contractor's delay or non-performance of this contract.'

"7. From and after April 24, 1967, Snodgrass had the right to require Jayhawk to furnish receipts or vouchers showing payment of labor and materials to the date of estimate for partial payment. From the beginning of the sub-contract, Snodgrass was in a position to know what labor and material bills Jayhawk had not paid. If the required information was not furnished by Jayhawk, Snodgrass could terminate the sub-contract.

"8. Jayhawk was a customer at plaintiff bank. On December 5, 1967, LaFoy discussed with Jones the possibility of Jayhawk obtaining a loan from the bank.

"9. Jones told LaFoy that the bank required security for a loan to Jayhawk. LaFoy told Jones that as a sub-contractor of Snodgrass on the Mulvane job,

Jayhawk had earned retainages then in the amount of $16,059.90 which retainage Jayhawk would assign as security for a loan.

"10. Jones, as president of plaintiff bank, prepared plaintiff's exhibit 4, Agreement and Recognition of Assignment of Account, which read as follows:

" 'The undersigned Snodgrass and Sons Construction Inc. does hereby agree that as of this 5th day of December, 1967, Jayhawk Services Inc. has accumulated a retainage on the construction job for Mulvane Schools in the amount of $16,059.90.'

" 'Since Jayhawk Services Inc. has borrowed in excess of this amount from The Farmers & Merchants State Bank of Derby, Kansas, the undersigned agrees when all work is completed by Jayhawk Service, Inc., they will pay the entire amount retained plus additional retainage accumulated from this date to date of completion by making a check for the amount due, $17,187.10 to Jayhawk Service Inc. and the Farmers & Merchants State Bank of Derby, Kansas.'

"Jones advised LaFoy that if and when plaintiff's exhibit 4 was executed by Snodgrass and returned to the bank, a loan could be secured for Jayhawk.

"11. On December 11, 1967, LaFoy presented plaintiff's exhibit 4 to Schiming and discussed with him the necessity of the instrument being signed by Snodgrass for the purpose of Jayhawk securing a loan at the bank.

"12. A part of Schimming's duties as secretary-treasurer of Snodgrass was the detail paper work and accounting involving payments to sub-contractors and retainages. After checking the retainage due Jayhawk, Schimming determined the correct retainage due Jayhawk was in the amount of $12,113.20. Schimming struck out the $16,059.90 figure typed in plaintiff's exhibit 4 and by hand inserted the figure $12,113.20 and initialed same. After correcting the amount of retainage due, Schimming signed plaintiff's exhibit 4 and returned it to LaFoy. At the time Schimming signed plaintiff's exhibit 4, he told LaFoy that Snodgrass would recognize an assignment to plaintiff or any bank if it was prepared on a regular assignment form and presented to him for execution.

"13. LaFoy took plaintiff's exhibit 4, as corrected and signed by Schimming, to Jones for the purpose of using it as security for a loan. Because of the change in the amount of retainage, Jayhawk could only borrow $13,000.00. A note in the amount of $13,000.00 was prepared and signed by LaFoy for Jayhawk. The note due the bank is dated December 11, 1967, and reads in part, 'Assignment of Account due from Snodgrass & Sons, Inc.' Jones made the loan to Jayhawk in reliance upon plaintiff's exhibit 4 signed by Schimming.

"14. Schimming knew when he was requested to and did sign plaintiff's exhibit 4 that LaFoy intended to use the instrument as security for a loan at plaintiff bank.

"15. When Jayhawk's note for $13,000.00 became due, LaFoy told Jones that the work at Mulvane was not completed. Jones did not know the work had been completed until he learned of Jayhawk's bankruptcy proceedings in June of 1968.

"16. Schimming states that in the construction business, the words 'work is complete' means that all the material and labor required have been furnished and when all bills and accounts for same have been fully paid and settled.

Jones was not aware of any special or unusual meaning placed on these words by those in the construction industry.

"17. On page C-2 of the specifications for the Mulvane job, Defendant's Exhibit 9, is found the following:

" 'DEFINITIONS (e) The term "work" of the contractor or subcontractor includes labor or materials or both.'

"The architect's certificate of substantial completion contains a definition of substantial completion as follows:

" 'The date of substantial completion of a project or specified area of a project is the date when the construction is sufficiently completed, in accordance with the contract documents, as modified by any change orders agreed to by the parties, so that the Owner can occupy the project or specified area of the project for the use for which it was intended.'

"18. Plaintiff's exhibit 6, an instrument from the files of Snodgrass entitled payment estimate-contract performance shows the mechanical work to be 100% completed on May 1, 1968, and that retainage in the amount of $13,350.70 was due Jayhawk on that date.

"19. On April 20, 1968, a certificate of substantial completion was issued by the architect. This certificate contained a list of unfinished items which Snodgrass agreed to complete. The owners of the building agreed to accept the project as substantially completed on April 29, 1968. The items contained on the architect's certificate to be completed by Jayhawk were completed by Jayhawk.

"20. Jayhawk or LaFoy have not paid the $13,000.00 note due plaintiff bank. Snodgrass has never paid plaintiff bank any part of the retainage on the Jayhawk sub-contract of the Mulvane job or any other project.

"21. Sometime shortly prior to May 14, 1968, Snodgrass learned that Jayhawk had not paid for many of the materials and equipment purchased for use in performance of the sub-contract. Beginning May 14, 1969, Snodgrass delivered several checks payable to Jayhawk and various vendors to whom Jayhawk was indebted for material and equipment on the Mulvane subcontract.

## "CONCLUSIONS OF LAW

"1. In the absence of evidence that Jones knew of any special meaning placed on the words 'work is completed' by Schimming or by the construction industry, the words will be given their ordinary meaning. Their ordinary meaning under the circumstances is that the labor and materials called for in the sub-contract had been furnished and the building was ready for acceptance and occupancy by the owner.

"2. There was a valid assignment of the retainage from Jayhawk to plaintiff bank. Plaintiff bank's right to recover against Snodgrass is, however, not based on the assignment, but is based upon the agreement expressed in plaintiff's exhibit 4.

"3. Jones was entitled to rely on plaintiff's exhibit 4 in making the loan to Jayhawk. Such reliance is sufficient consideration for the agreement between plaintiff bank and Snodgrass set forth in plaintiff's exhibit 4.

"4. Plaintiff's exhibit 4, by its terms, is more than an acknowledgement of an assignment. It is an agreement constituting a contract between plaintiff

bank and Snodgrass, binding Snodgrass to pay the bank. The work was completed and payment was due not later than May 1, 1968.

"5. Plaintiff bank is entitled to and is awarded judgment against defendant Snodgrass in the amount of $13,000.00 with interest thereon from December 11, 1967, at the rate of 7% per annum until paid.

"6. The costs of this action are taxed to the defendant Snodgrass. Each party will pay the costs of depositions it caused to be taken."

At the outset this court finds that all of the Findings of Fact of the court are supported by substantial competent evidence. The issues to be determined by this court are issues of law which must be based upon the facts as established by the trial court.

The appellant Snodgrass' first contention is that the "Agreement and Recognition of Assignment of Account" as set forth in Finding of Fact No. 10 by the terms of which Snodgrass agreed to pay the accumulated retainage and additional retainage by check jointly to the subcontractor Jayhawk Service Inc. and to the Farmers and Merchants State Bank constituted a mere assent to the assignment of Jayhawk's rights to retainage under its subcontract. Appellant takes the position that it was not an independent contract which established any obligation on Snodgrass to pay to the bank the entire retainage held under the subcontract. The appellant Snodgrass in substance contends that under the subcontract for mechanical work entered into by Jayhawk as subcontractor, Jayhawk was obligated to promptly pay when due for all labor and materials used and required in completing the subcontract, and authorized Snodgrass to pay bills directly for labor and materials if Jayhawk did not pay the same and to deduct such payment from the amounts retained under the 10% retainage provided for in the subcontract. Snodgrass emphasizes that Jayhawk did not pay for all labor and materials and that Snodgrass was compelled to pay them. It is undisputed that such payments exceeded the amount due Jayhawk by way of retainage under the subcontract.

The rationale which Snodgrass asserts as a basis for its position simply is that an assignee does not have greater rights against the debtor than does his assignor. Starting with this premise Snodgrass reasons that since Jayhawk failed to fulfill its obligation under the contract to pay for labor and materials, Snodgrass was entitled to a setoff for those items it paid against any sums due from the retainage account under the subcontract. Appellant then contends that the bank as assignee stands in the shoes of Jayhawk and therefore Snodgrass is not indebted to the bank.

We cannot accept appellant's rationale. The "Agreement and Recognition of Assignment of Account" which was signed by Snodgrass and which was relied upon by the bank in making the loan to Jayhawk was more than a simple assignment. We have no hesitancy in holding that by virtue of this instrument Snodgrass agreed to pay the entire retainage to the bank. This instrument constituted an independent contract between Snodgrass and the bank and simply provided additional protection to the bank for the making of the loan by the bank to Jayhawk.

The specific language of the instrument is important. In the first paragraph Snodgrass agreed that as of December 5, 1967, Jayhawk Service Inc. had accumulated a retainage on the construction job for the Mulvane Schools in the amount of $12,113.20. Paragraph two declares that since Jayhawk Service Inc. has borrowed in excess of *this amount* from the Farmers and Merchants State Bank of Derby, Kansas, Snodgrass agrees that when all work is completed by Jayhawk Service Inc. it will pay the *entire amount retained* plus additional retainage accumulated from *this date* to date of completion by making a check for the amount due, $17,187.10, to Jayhawk Services Inc. and the Farmers and Merchants State Bank. It should be noted that the amount to be borrowed by Jayhawk is in excess of "this amount" which is the agreed amount of retainage. Snodgrass agreed to pay "the entire amount retained" now plus "additional retainage accumulated from this date to the date of completion." The amount to be paid, $17,187.10, is a fixed amount and constituted the full 10% of the total contract price of $171,871 provided as a retainage in the subcontract to Jayhawk. The "Agreement and Recognition of Assignment of Account" signed by the contractor Snodgrass clearly obligated Snodgrass to pay the entire amount of the retainage of 10% provided in the subcontract of Jayhawk Services Inc. without a deduction for any setoffs for unpaid obligations of Jayhawk for labor and materials. The evidence is undisputed that the bank relied upon this agreement when it made the loan to Jayhawk.

Under the facts of this case, the reliance doctrine as applied by the trial judge, is applicable. The Restatement, Contracts, Section 90, succinctly states the doctrine: "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice

can be avoided only by enforcement of the promise." (p. 110.)

This doctrine has been recognized and applied in *State Investment Co. v. Cimarron Insurance Co.*, 183 Kan. 190, 326 P. 2d 299; *Sterling Construction Co. v. Humboldt National Bank*, 345 F. 2d 994 (10th Cir. 1965); and in *Nello L. Teer Company v. Kanawha Valley Bank*, 227 F. 2d 306 (4th Cir. 1955).

Were this action merely one by an assignee against a debtor, appellant's argument that it had a right to setoff might be more persuasive. In this case, however, the trial court correctly found the breach of an independent contract. Before appellant would be entitled to a setoff against the bank, it would have to establish an independent claim or cause of action against the bank itself and this it has not done.

The appellant's second contention is that even if the bank acquired greater rights against Snodgrass than Jayhawk had by virtue of the "Agreement and Recognition of Assignment of Account" Snodgrass is still not liable to the bank because the obligation to pay was subject to the condition that all work be completed by Jayhawk. Appellant's contention in this regard is that the phrase "work is completed" has a special meaning in the construction industry which requires not only that the labor and materials be furnished but also that the subcontractor must pay for all labor and materials furnished. On this point the trial court held that in the absence of any evidence showing that the bank was aware of a special meaning attached to the phrase "work is completed", the phrase must be given its ordinary meaning. The court concluded that the work was actually completed on or before May 1, 1968, and further found as a fact that the banker, Jones, was not aware of any special or unusual meaning placed on the words "work is completed" in the construction industry. Since there was substantial competent evidence to support the findings of fact of the trial court they will not be disturbed on this appeal.

We think it is also important to note that the "Agreement and Recognition of Assignment of Account" makes no reference whatsoever to the provisions of the subcontract entered into between Snodgrass and Jayhawk. The language of that instrument states unequivocally that Snodgrass will pay to the bank the entire amount retained as of December 5, 1965, plus additional retainage accumulated from that date to the date of completion when all work was

completed by Jayhawk. Snodgrass may have improvidently entered into this agreement, but having done so it is bound to carry out its obligations thereunder. For the reasons set forth above the judgment of the district court is affirmed.