No. 47,713

Gerald R. Temmen, *Appellant,* v. Kent-Brown Chevrolet Company and General Motors Corporation, *Appellees.*

(535 P. 2d 873)

Opinion filed May 10, 1975.

*Fred W. Phelps,* of Topeka, argued the cause and was on the brief for the appellant.

*William E. Enright,* of Scott, Quinlan and Hecht, of Topeka, argued the cause, and *George A. Scott* of the same firm was with him on the brief for appellee Kent-Brown Chevrolet Company.

*Myron S. Silverman,* of Gage and Tucker, Kansas City, Mo., argued the cause, and *Michael J. Grady,* of Cosgrove, Webb and Oman, of Topeka, was with him on the brief for appellee General Motors Corporation.

The opinion of the court was delivered by

HARMAN, C.: This is an action seeking damages for fraudulent misrepresentation in connection with an agreement concerning the payment for repairs made on plaintiff's automobile. Defendants are the Kent-Brown Chevrolet Company, which did the repairs, and its alleged principal, General Motors Corporation, the manufacturer of the vehicle. The trial court rendered summary judgments for each defendant and plaintiff has appealed.

We first recite the factual background as gleaned from the pleadings, answers to interrogatories, affidavits and exhibits on file in the case, indicating dispute or uncertainty where either exists.

In April, 1969, a Charles Frisbie purchased a new 1969 Chevrolet Camaro from the Van-T Chevrolet company. Frisbie was issued a Protect-O-Plate card in his name, which card evidenced the manufacturer's warranty. To obtain authorized repairs under the warranty this card is presented to an authorized dealer for imprinting on the work order. In July, 1972, Frisbie traded in the Camaro to defendant Kent-Brown Chevrolet Company, Van-T's successor, on the purchase of a new automobile. In August, 1972, plaintiff Gerald R. Temmen and his father, Joseph R. Temmen, purchased the Camaro from Kent-Brown. At the time plaintiff was employed by Kent-Brown in its body shop and his father was a salesman for Kent-Brown. The purchase order for the Camaro had the notation on it that the car was sold "as is with factory warranty". The vehicle was originally sold under a 50,000 mile warranty issued by defendant General Motors (GMC), which covered certain specified parts. When plaintiff purchased the Camaro it had been driven about 24,000 miles. To obtain the benefits of the unexpired warranty coverage a second purchaser of the vehicle was required by the terms of the warranty to apply to the dealer for a Protect-O-Plate within thirty days or 1000 miles of vehicle usage following purchase and pay a $25.00 fee to the dealer. Admittedly neither

plaintiff nor his father made application for this unexpired warranty coverage nor did either pay the $25.00 fee. Evidently plaintiff secured and retained the Protect-O-Plate card issued in Charles Frisbie's name. On December 8, 1972, plaintiff used the Frisbie plate on a work order to obtain from Kent-Brown at no cost to him replacement of a water pump under the warranty. This resulted in a factory claim of $32.26. The circumstances of this transaction and the part played in it by various individuals are not revealed by the record (plaintiff simply asserts Kent-Brown agreed to do this by way of waiver).

On July 16, 1973, plaintiff again brought the Camaro to Kent-Brown's shop for repair work to the rear wheel bearings. The vehicle at this time had 42,000 miles on it. Some of the facts respecting this transaction are sharply in dispute.

In plaintiff's affidavit filed in opposition to those filed by Kent-Brown in support of its motion for summary judgment he says that at the time he delivered the automobile for repairs he expressly told Kent-Brown's service writer that if the repairs could not be done under the warranty evidenced by the Frisbie Protect-O-Plate in the vehicle's glove compartment plaintiff would have the work done elsewhere; that Kent-Brown's service writer stated the work would be done under the warranty. A work order form was filled out. This form was an exhibit before the trial court. Plaintiff signed this form under a legend which stated "TERMS: STRICTLY CASH UNLESS ARRANGEMENTS MADE". The Frisbie Protect-O-Plate was imprinted on that part of the form which indicated the name and address of the owner of the vehicle. The word "warranty" was handwritten on the face of the work order; however, this word was apparently partially scratched out later by pencil markings through it.

An affidavit of Kent-Brown's service manager, filed by Kent-Brown, states that shortly after plaintiff brought the vehicle in for checking for possible trouble with the rear wheel bearings, he recognized the vehicle and looked at the work order on it and saw that the Protect-O-Plate used had never been transferred to plaintiff; he thereupon talked to plaintiff, advising him the plate could not be used, the work could not be done under the Frisbie warranty and plaintiff would have to pay for any work done; plaintiff became very upset; later, however, plaintiff told him to go ahead and do the work and plaintiff would pay for it; the work was done on the ve-

hicle in the total sum of $112.85; plaintiff removed the vehicle from Kent-Brown's premises without paying for the work as he agreed, whereupon he (the service manager) wrote on the work order the following: "Take out of next weeks ck per LJS" and he advised the accounting department accordingly. Presumably, the service manager also wrote on the work order the words: "NO WARRANTY".

The amount of $112.85 was withheld by Kent-Brown from plaintiff's next pay check (Kent-Brown later discovered it had inadvertently overcharged plaintiff the sum of $37.16 for the repairs made and it mailed plaintiff's counsel a check for that amount).

In plaintiff's affidavit he denied he had any conversation with the service manager respecting the repairs or payment of repairs as related in the service manager's affidavit and he specifically denied he had agreed to pay for the work to be done.

Plaintiff's petition is not well articulated so far as stating any specific, precise theory of recovery is concerned; rather it is sort of a mixed bag in that a mingling of fraudulent misrepresentation, oppression, overreaching, outrage, bad faith and unjust enrichment is alleged along with the facts stated in his affidavit and a prayer for $10,000 actual damages and $100,000 punitive damages. Rhetoric aside, and despite the fact the petition is in some respects contradicted by statements in his affidavit, it appears plaintiff's theory is that Kent-Brown agreed to do the repair work at no cost to him but at the time of making such agreement had no intention of keeping it. Plaintiff's petition further alleged that Kent-Brown was at all times the agent of General Motors Corporation.

Following the filing of answers by both Kent-Brown and GMC which joined issue with plaintiff's claims, procedural skirmishing occurred which need be noticed only briefly: On April 1, 1974, plaintiff served upon Kent-Brown and GMC numerous interrogatories to be answered; each defendant filed objections thereto but GMC eventually answered many of theirs; Kent-Brown was granted two extensions of time within which to answer theirs but never did so; plaintiff answered GMC's interrogatories; on July 1, 1974, plaintiff moved for an order compelling Kent-Brown to answer his interrogatories; on July 16, 1974, Kent-Brown served notice to take the depositions of plaintiff and his father on July 22, 1974; plaintiff responded on July 18, 1974, with his motion for a protective order that the depositions not be taken on July 22nd because

his attorney's work schedule would prevent counsel's appearance and also that Kent-Brown should be denied further discovery until it answered plaintiff's interrogatories. July 19, 1974, Kent-Brown filed its motion for summary judgment, attaching thereto the affidavits of its general manager and service manager. As indicated, plaintiff presented his version of events in an affidavit in opposition.

The trial court concluded plaintiff had not presented a claim upon which relief could be granted and it sustained the motion. The court's memorandum opinion first recited the facts concerning which there is no dispute and then continued:

"8. The work order (C 31285) shows signature of plaintiff agreeing to 'Terms: Strictly cash unless arrangements made.' On the previous work order where the warranty was honored (C 59661) no signature was present.

"9. The affidavits of plaintiff and defendant's employees are inconsistent as to the conversations, if any, and the nature of the same and thus the Court will not attempt to resolve them.

"10. The plaintiff is not suing on any warranty, express or implied, but rather on an oral conversation between plaintiff and defendant's employees where, in essence, plaintiff claims that the defendant, through its employees advised plaintiff that the repairs in question would be made at no cost to him. Defendant denies this.

. . . . . . . . . . . . .

"1. As indicated, there is no dispute that the plaintiff purchased a used vehicle 'as is' except with remaining factory warranty, provided plaintiff made the arrangements to transfer the warranty to him. This he failed to do. Thus we start with the premise that there existed no warranty on the vehicle in favor of the plaintiff; and further none are applicable by any operation of law under an 'as is' purchase.

"2. The fact that the vehicle was repaired on earlier instances after plaintiff purchased the vehicle with Frisbie's Protect-O-Plate cannot as a matter of law, under these circumstances, be considered as any waiver, estoppel or agreement to repair in the future under this original warranty.

"3. The whole basis of plaintiff's action hinges on a statement or statements made by defendant's employees that they will agree to repair it at no cost to him. The written documents are inconsistent with this 'parol agrement'.

"4. The action must fail for various reasons:

"a. On the face of it there is no showing of any consideration, nor can any be inferred from the facts;

"b. Plaintiff's allegation attempts to vary written documents;

"c. The parties are bound by the 'as is' sale, and plaintiff's attempt to avoid this by alleging an oral conversation is insufficient in law."

The court expressed its recognition that some facts were in dispute between the parties but stated these disputes were not on material matters. As to GMC's part in the lawsuit the court said:

"In addition, General Motors Corporation, is a party defendant under the theory of agency. It is assumed, from the pleadings, that the relationship occurred because of the defendant's (Kent-Brown) employee advised plaintiff that repairs would be made at no cost to plaintiff. On this basis, the Court grants plaintiff ten (10) days to show why the action against General Motors should not be dismissed for failure to state a cause of action upon which relief can be granted."

Plaintiff immediately appealed from the decision rendering summary judgment in favor of Kent-Brown and filed his statement of points accordingly. However, he took no action respecting GMC within the allotted ten days' time. Thereafter GMC filed its motion to dismiss the action as to it. At the hearing on this motion plaintiff stated he was relying on vicarious liability in seeking to recover from GMC. The trial court ruled that absent a finding of liability against Kent-Brown there could be no finding against GMC under the theory of vicarious liability and it rendered summary judgment for GMC. Plaintiff filed a separate notice of appeal from this order. By agreement this appeal was consolidated with the pending appeal respecting Kent-Brown; however, no statement of points was ever filed as to the summary judgment in favor of GMC. The statement of points previously filed as to Kent-Brown does not in anywise mention GMC or the rendition of summary judgment in its favor and these points were never enlarged or changed. The trial court never reached a determination whether an agency relationship existed between Kent-Brown and GMC. GMC had denied such relationship and supported its position by documents attached to its answers to plaintiff's interrogatories.

Although GMC restates here its reliance upon the nonliability of Kent-Brown and upon undisputed documentary evidence that Kent-Brown was never its agent with respect to this dispute it first points out that plaintiff-appellant has failed to preserve an issue for review as to it, for the reason appellant has not complied with our Rule 6 (d) relating to appellate practice which provides:

". . . no issue, other than an issue going to the jurisdiction of the court over the subject matter of the litigation, may be briefed or will be considered on the appeal unless included in the statement of points." (214 Kan. xxiii.)

We have uniformly held that failure to preserve an issue by including it in the statement of points precludes consideration of that issue on appeal (see cases cited at K. S. A. 1974 Supp. 60-2701, pp. 384-385). Here appellant has never in his points on appeal specified

any error with respect to the trial court's rendition of judgment for appellee GMC. The result is, we have nothing to review and the appeal as to GMC must be dismissed.

As to appellee Kent-Brown appellant first contends the trial court erred in rendering summary judgment when discovery was not complete. Here the parties had clashed over appellant's interrogatories—Kent-Brown had filed objections to them and appellant had applied for an order compelling their answers and preventing Kent-Brown from taking appellant's deposition until it answered the interrogatories. These motions had not been ruled upon and appellant asserts discovery was obviously incomplete. In *Spears v. Kansas City Power & Light Co.*, 203 Kan. 520, 455 P. 2d 496, it was stated with respect to the contention that summary judgment was improper because pretrial discovery was incomplete:

"It is true we said in *Brick v. City of Wichita*, 195 Kan. 206, 403 P. 2d 964, that ordinarily motions for summary judgment should not be sustained so long as pretrial discovery remains unfinished. But we also said in *Brick*, and we have consistently held in other cases, that K. S. A. 60-256 authorizes the entry of summary judgment if the pleadings, depositions, answers to interrogatories and affidavits, if any, show there is no *genuine* issue as to any *material* fact." (p. 528.)

The trial court herein concluded the admitted factual disputes were not on material matters. Thus, if that conclusion were correct summary judgment could properly be granted even though discovery remained incomplete. Determination of this question necessarily is dependent upon resolution of point number two concerning whether there were any disputed material facts.

Appellant contends it was error to sustain Kent-Brown's motion for summary judgment because material facts were in dispute. His petition alleged that Kent-Brown had orally agreed the repairs on his automobile would be done at no cost to him. (Appellant specifically asserts he is not suing under the warranty.) The trial court ruled the written documents were inconsistent with "this parol agreement" and the latter could not be used to vary the terms of the former. It applied that which is known as the parol evidence rule. The written documents referred to are the purchase order, under which appellant bought the vehicle in an "as is" condition with the warranty which admittedly he did not renew, and the work order. Kent-Brown admits that work done on the vehicle on a previous occasion had been done under the warranty at no cost to appellant. It is disputed whether Kent-Brown orally agreed to do

the same as to the subsequent repair. The trial court relied upon the fact appellant had signed the work order under the provision which stated "TERMS: STRICTLY CASH UNLESS ARRANGEMENTS MADE" (appellant had not done so on the previous work order). The court ruled that since parol evidence is inadmissible to vary the terms of a written contract the terms of the work order were controlling. Appellant admits he signed the work order but asserts he did so with the understanding the work would be covered by the warranty—that constituted the "arrangements made" as evidenced by the Protect-O-Plate imprinted in the appropriate place on the work order and the word "warranty" handwritten on it. Considering everything which was on the work order when appellant signed it, it is susceptible to the interpretation urged by appellant if that was in fact the intention of the parties. The words "NO WARRANTY" presumably were written on the work order after appellant signed it.

The parol evidence rule was well expressed in *Thurman v. Trim,* 206 Kan. 118, 477 P. 2d 579, as follows:

"When a contract is complete, unambiguous and free of uncertainty, parol evidence of a prior or contemporaneous agreement or understanding, tending to vary or substitute a new and different contract for the one evidenced by the writing is inadmissible." (Syl. ¶ 2.)

Thus it will be seen by its very terms the exclusory rule is not always applicable in every situation in which extrinsic evidence is sought to be used where a written contract exists. Beyond this, the rule is not inflexible and there are exceptions. In the oft-cited case of *Rice v. Rice,* 101 Kan. 20, 165 Pac. 799, this was stated:

"Although the terms of a written obligation, assumed to be valid, cannot be varied by parol, it may be shown by parol what caused the party thus to obligate himself, and thereby test the question whether he is legally bound, as the writing imports, or whether he is by any cause wholly or partially freed from liability thereon." (Syl. ¶ 1.)

An exception to the rule was stated in *Hawthorn-Mellody, Inc. v. Driessen,* 213 Kan. 791, 518 P. 2d 446, as follows:

"A well-recognized exception to the parol evidence rule permits the use of evidence of fraudulent representations made during the course of negotiations where a contract is procured or induced by the fraudulent representations of one of the parties which were relied upon by the other." (Syl. ¶ 1.)

Under the foregoing rules and appellant's allegations of fraud in the inception it appears the oral testimony concerning the signing of the work order and the so-called agreement that the work would be done without cost to appellant despite his failure to have the

warranty reissued to him was admissible. The evidence on these points was sharply disputed and resolution of the dispute was for the trier of the fact. Part of the problem in dealing with the motion for summary judgment may perhaps have arisen from the fact that when it was presented the issues had not been defined as fully as they might have been. Since the disputed facts were on material issues in the case summary judgment was improperly granted.

Additionally the trial court found there was no showing of any consideration for the alleged agreement. This defense was not pleaded in Kent-Brown's answer and just how it entered the case is not revealed in the record before us. Every contract, express or implied, must be supported by a consideration to be legally enforceable (*Coder v. Smith*, 156 Kan. 512, 134 P. 2d 408). Consideration has been defined as any benefit, profit or advantage flowing to the promisor which he would not have received but for the contract, or any loss or detriment to the promisee (*State Investment Co. v. Cimarron Insurance Co.*, 183 Kan. 190, 195, 326 P. 2d 299).

Once the work was done under the warranty Kent-Brown presumably would receive compensation from GMC, if that were indeed Kent-Brown's agreement with appellant and if GMC did not challenge the validity of the transaction. The more difficult question is the detriment to appellant. He alleges he specifically informed Kent-Brown that unless the work were taken care of under the warranty he would take the vehicle elsewhere for the repairs and that he left it with Kent-Brown only upon assurance the warranty would cover the work. In 1 Williston on Contracts, 3d ed., § 102A it is stated:

". . . Detriment, therefore, as used in testing the sufficiency of consideration means legal detriment as distinguished from detriment in fact. It means giving up something which immediately prior thereto the promisee was privileged to retain, or doing or refraining from doing something which he was then privileged not to do, or not to refrain from doing.

"Benefit correspondingly must mean the receiving as the exchange for his promise of some performance or forbearance which the promisor was not previously entitled to receive. That the promisor desired it for his own advantage and had no previous right to it is enough to show that it was beneficial." (pp. 381-382.)

Appellant asserts that by reason of Kent-Brown's agreement he gave up the right to attempt to receive a better bargain elsewhere for the repair work. In 17 CJS, Contracts, § 74, it is stated:

"It has been said that every sufficient consideration, although not technically an estoppel, contains the substantial elements of an estoppel in pais, since one

man by his promise induces another to change his situation, and to repudiate his promise would enable him to perpetrate a fraud. Generally it makes no difference that one to whom a naked promise was made has suffered damage through relying or acting on it, but a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." (p. 764.)

See *French v. French,* 161 Kan. 327, 330-331, 167 P. 2d 305, 308, where the foregoing was applied.

Tenuous though it be, we believe that under the circumstances here there was a sufficient showing of consideration.

The appeal as to appellee General Motors Corporation is dismissed.

The summary judgment rendered in favor of Kent-Brown is reversed and the cause is remanded for further proceedings.

APPROVED BY THE COURT.

FROMME, J., not participating.